162 So. 826

STATE ex rel. PORTERIE, Atty. Gen., et al.
v. WALMSLEY, Mayor, et al.

Nos. 33419, 33447, 33246, 33251.

May 11, 1935.

Rehearing Denied July 10, 1935.

See, also, 181 La. 597, 160 So. 91.

Gaston L. Porterie, Atty. Gen., Geo. M. Wallace, of Baton Rouge, and James O'Connor, of New Orleans, for appellant-appellee.

E. M. Robbert, City Atty., Francis P. Burns and Henry B. Curtis, Asst. City Attys., and Bertrand I. Cahn, all of New Orleans, for appellees-appellants T. Semmes Walmsley et al.

James C. Henriques, of . New Orleans, for appellant Board of Liquidation of City Debt.

Huey P. Long, Harold A. Moise, and James Wilkinson, all of New Orleans, and Peyton R. Sandoz, of Baton Rouge, for appellees Orleans Levee Dist., Board of Com'rs of Port of New Orleans, and Board of Control of New Basin Canal and Shell Road.

HIGGINS, Justice.

This is an action by the state of Louisiana, on the relation of the Attorney General, who also appeared in his own right, in behalf of the property taxpayers of the city of New Orleans and the holders of the public improvement bonds issued for the sewerage, drainage, and water systems of the city of New Orleans, to have declared unconstitutional Act No. 36 of the 2d Extra Session of the Legislature of 1934, approved November 21, 1934. This statute recreates and reconstitutes the membership of the sewerage and water board by amending and re-enacting section 8 of Act No. 6 of the Extra Session of 1899, as amended by Act No. 111 of 1902, which provides for the construction, control, maintenance, and operation of a public water system and a public sewerage system for the city of New Orleans, under the control of a specially constituted "sewerage and water board."

The act provides that the members of the sewerage and water board shall be constituted as follows: The mayor of the city of New Orleans, the commissioner of public utilities of the city, the chairman of the board of health of the city of New Orleans, two members of the board of liquidation of the city debt, to be appointed by the mayor on the recommendation of that board, three members of the board of commissioners of the Port of New Orleans, to be appointed by the mayor on the recommendation of that board, one member of the state board of health, to be appointed by the mayor on the recommendation of that board, three members of the board of commissioners of the Orleans levee district, to be appointed by the mayor, on the recommendation of that board, and one member of the board of control of the New Basin Canal and Shell road, to be appointed by the mayor on the recommendation of that board. All of these parties and boards are made defendants.

The suit was filed on December 5, 1934, and it is alleged that the statute would become effective 12 o'clock noon, December 6, 1934, and that unless the above-mentioned parties and boards were restrained by injunction, they would proceed to carry out the alleged unconstitutional law to the irreparable injury of the state, the city, the taxpayers, and the bondholders.

The original and supplemental petitions allege that the statute is unconstitutional for the following reasons:

(1) That the change proposed to be made by this statute could not be made

without the consent of the New Orleans taxpayers and bondholders.

(2) That the statute undertook to impair and to violate the conditions upon which the taxpayers of New Orleans had voted the special tax, and that the statute therefore undertook to impair the vested rights and the contract rights of the holders of the bonds which were issued under the contract.

(3) That, under the constitutional amendment made pursuant to Acts Nos. 4 and 6 of 1899, Ex. Sess., and under article 313 of the Constitution of 1913, and section 23 of article 14 of the Constitution of 1921, the Legislature could not change the membership or composition of the sewerage and water board.

(4) That Act No. 36, approved November 21, 1934, in so far as it attempted to add to or change the membership of the sewerage and water board, or the mode of selection of the members thereof, as established by section 8 of Act No. 6 of 1899, Ex. Sess., was an attempt to violate and impair the terms and conditions of the property taxpayers' petition, and to impair the vested rights and contract rights of the holders of the bonds issued under the contract.

(5) That said Act No. 36 impairs the obligations of said contracts with the property taxpayers and bondholders, in violation of section 15 of article 4 of the Constitution of Louisiana, and section 10 of article 1 of the Constitution of the United States, and will deprive them of their property without due process of law, in violation of section 2 of article 1 of the Constitution of Louisiana, and the Fifth and Fourteenth Amendments of the Constitution of the United States.

(6) In that the members to be selected by the board of commissioners of the Port of Orleans, the state board of health, and the board of control for the New Basin Canal and Shell road need not be residents of the city of New Orleans, all in violation and contravention of section 22 of article 14 of the Constitution of Louisiana of 1921.

(7) In that said new sewerage and water board attempted to be created will not necessarily include a member from each of the seven municipal districts of the city of New Orleans, as provided by section 8 of Act No. 6 of the Extra Session of 1899, all in violation of the vested rights of plaintiff, as guaranteed by section 15 of article 4 of the Constitution of 1921 of the state of Louisiana.

(8) In that one or more members of each the boards of commissioners of the Port of Orleans, of the board of control of the New Basin Canal and Shell road, and of the state board of health are necessarily by the respective laws of the creation of said boards not citizens and electors of the parish of Orleans (and in the case of the state board of health no member is required to be a citizen and elector of said parish); and that said Act No. 36,

in purporting to establish special bodies of electors consisting of all the members of said respective boards, including those not citizens and electors of Orleans parish, for the purpose of naming and electing commissioners of the sewerage and water board, the functions and duties of which are confined to the parish of Orleans, violates not only said section 22 of article 14 of the Constitution of Louisiana of 1921, but violates also the letter and spirit of section 1 of article 8 of said Constitution, which provides for the electoral qualifications.

(9) In that the board of commissioners of the Port of Orleans, the board of control of the New Basin Canal and Shell road, the state board of health, and the board of levee commissioners of the Orleans levee district have no power or authority under the respective laws of their creation to select, name, or otherwise choose and appoint commissioners of said sewerage and water board; that such right, duty, or function is totally foreign to the respective prescribed rights, duties, and functions of said boards; that the title to said Act No. 36 does not purport to embrace the enlargement of the rights, duties, and functions of said boards, or any one of them, and if said Act No. 36 be construed as purporting to confer such enlarged power, the same is unconstitutional, null, and void in that the subject-matter thereof is not embraced in its title, and is violative of section 17 of article 11 of said Constitution; and, further, even if the title to said Act No. 36 be held to be indicative of the aforesaid objects, the said Act No. 36 violates said section 17 of article 11 of said Constitution in that the same embraces more than one object.

(10) In that it is an attempt to revive section 8 of Act No. 111 of the Legislature of Louisiana, approved July 8, 1902, which has been declared unconstitutional by the Supreme Court of the state of Louisiana in the case of State ex rel. Saunders v. Kohnke, reported in 109 La. at page 838, 33 So. 793, without expressing· in its title the objects or subjects of section 8 of Act No. 6 of the Extra Session of the Legislature of Louisiana, approved August 18, 1899, to be amended, all in violation and contravention of section 16 of article 3 of the Constitution of the state of Louisiana; and in that section 8 of Act No. 111 of 1902, having been so declared unconstitutional, was not susceptible of amendment.

(11) In that it is an attempt to remove certain members of the sewerage and water board without cause and in a manner different from that provided by section 9 of Act No. 6 of 1899, Ex. Sess., said members of said sewerage and water board being removable only in the manner prescribed by and for the causes enumerated in articles 217 and 222 of prior Constitutions of the state of Louisiana, which articles are now embodied in sections 1 and 6 of article 9 of the Constitution of 1921; and that said section 9 of said Act No. 6 was adopted as a part of the Constitution of

1898, has been embodied in all subsequent Constitutions, and is a part of the Constitution of 1921.

The four first mentioned defendants were members of the sewerage and water board, before the act in question was enacted. They filed answers attacking the constitutionality of the statute on substantially the same grounds that the plaintiff did. The other four defendants answered and denied that the statute was unconstitutional and averred that it was a legitimate exercise of the police power of the state through its legislative department.

On the trial of the rule nisi for a preliminary injunction, the district judge overruled the first four named defendants' exceptions of want of interest and right on the part of the Attorney General to institute the proceedings, and pointed out that the constitutionality vel non of the act being involved both on the rule nisi and on the merits that all parties should agree to take up the question at once. The plaintiff and the last four named defendants agreed, but the first four named defendants refused. The district judge issued the preliminary writ of injunction as prayed for on the authority of State v. New Orleans Debenture Redemption Co. of La., 107 La. 562, 32 So. 102, without passing upon the constitutional issue. Appeals were taken from the judgment by all parties concerned and consolidated in this court for the purpose of trial.

By a divided court, the judgment of the district court was affirmed and the case remanded for trial on the merits. The constitutional questions being necessarily involved in connection with the preliminary injunction, there were expressions in the majority opinion that the statute appeared to be constitutional, whereas in the dissenting and concurring opinions an initial contrary view was expressed. State ex rel. Porterie, Attorney General, v. Walmsley, Mayor, et al., 181 La. 597, 160 So. 91.

The case was tried on its merits in the district court and there was judgment declaring the statute constitutional, dissolving the preliminary injunction and dismissing the suit.

The state of Louisiana, the Attorney General, and the first four named defendants have appealed. The appeals have been consolidated here in order that they might be presented at one time.

The mayor of the city of New Orleans, the commissioner of public utilities of the city, the chairman of the board of health of the city of New Orleans, and the board of liquidation of the city debt, as defendants in the case, in their pleadings prayed that the plaintiffs' suit be dismissed because they had no right or interest to institute the action, and, in the alternative, joined with the plaintiffs in praying that the act be declared invalid and that the preliminary writ of injunction be made permanent.

The plaintiffs moved to dismiss these four defendants' appeals on the ground that the district judge, having dismissed the plaintiffs' suit, these defendants obtained the judgment that they prayed for and cannot appeal from a judgment in their favor; plaintiffs also asked for the dismissal of the appeal, because the position of these defendants in their pleadings is inconsistent and contradictory in that they ask for the dismissal of the suit and also pray that the court hold the statute unconstitutional and issue a permanent injunction restraining the enforcement of the act. It is stated in the motion that plaintiffs attempted to have this inconsistent position of these defendants corrected in the lower court by requiring them to answer categorically the allegations of the petition, in accordance with Act No. 27 of 1926, but that the trial court overruled this motion to strike out the inconsistent averments of those defendants' answers, to which ruling the plaintiffs reserved a bill of exception.

It is also stated that, if the defendants wish to avail themselves of the right to attack the constitutionality of the statute, they should have done so in a reconventional demand, particularly since they had questioned the plaintiffs' right to bring the suit.

While it is true the defendants' position is involved, it sufficiently appears that plaintiffs and defendants, on the merits of the case, have joined and urged the unconstitutionality of the statute for the same reasons.

■ The trial judge having held the act constitutional, contrary to the defendants' interest on the merits, they had a right to appeal.

The dismissal of the suit by the district judge was based on the ground that the statute was valid and not on the theory that plaintiffs were without a right or interest to institute the proceedings.

The motion to dismiss the appeal is overruled.

■ The defendants, the mayor of the city of New Orleans, the commissioner of public utilities of the city, the chairman of the board of health of the city of New Orleans, and the board of liquidation of the city debt, have answered the plaintiffs' appeal and moved that the case be remanded to the district court, in order that the decree might be corrected so as to render a definitive judgment on the merits. They complain that they did not get due process of law, because of the procedure followed by the district judge, contrary to the statute law of this state.

The record shows that the district judge rendered judgment holding that the statute was constitutional and dismissed the plaintiffs' suit, but the trial judge states when his attention was called to the fact that the minute clerk had not written the judgment as he rendered it, he ex proprio motu corrected it before the elapse of three

days allowed by law within which to sign the judgment; that the correction of the minutes and the judgment was merely to rectify these patent clerical errors; and that it was unnecessary to grant a new trial for that purpose.

We are of the opinion that the district judge had the right under article 546 of the Code of Practice and the rules of the civil district court to do what he did, particularly since these defendants were in no way prejudiced.

The alleged error can also be corrected by this court under these four defendants' appeal and answer to the appeal. No useful purpose could be served by remanding the case to the lower court for the purpose of making a pro forma correction, when our learned brother below has already passed upon all issues involved on the merits. The only result of again remanding the case to the lower court would be the incurring of unnecessary delay in a case where the record already bristles with dilatory pleas and objections by those defendants who have joined with the plaintiffs in the primary purpose of the suit to have the act declared unconstitutional.

The complaint that this matter was tried so summarily as to deprive the defendants of due process of law is equally unfounded, because the record shows that the trial judge acted well within the law and gave all parties concerned every opportunity to fully and completely present all issues raised.

The motion to remand the case to the lower court is denied.

The major attack on the validity of the act is threefold:

First, that the terms and conditions of the taxpayers' petition became a part of the Constitution of the state and the Legislature was without authority to repeal or amend the same by varying or changing those conditions; and that the reservation of legislative power under section 35 of Act No. 6 of the Extra Session of 1899 did not give the Legislature the right to modify those terms and conditions.

Second, that the statute was enacted contrary to the provisions of the so-called "home rule clauses" of the Constitution.

Third, that the act, even if it be considered as an exercise of the police power of the state through the Legislature, impairs the obligation of the contract between the city of New Orleans on one hand and the taxpayers of the city and the holders of the improvement bonds on the other hand; and takes away from these parties vested property interests without due process of law.

These points being interrelated, we shall discuss them together.

Principal reliance to support the plea of unconstitutionality is placed upon the case of State v. Kohnke, 109 La. 838, 33 So. 793, where this court held that the restrictions contained in the taxpayers' petition for the creation of the sewerage and water board having been ratified and approved as

a constitutional amendment, the Legislature was without authority to change the membership or personnel of the sewerage and water board, and that Act No. 111 of 1902, in so far as it increases or changes the membership of the board, is unconstitutional, being in violation of articles 319 and 320 of the Constitution of 1898, commonly referred to as the "home rule clauses." A complete history of the sewerage and water board and the 2-mill tax voted for the purpose of sewerage and water systems of New Orleans will be found in the opinion and in State v. Billhartz, 146 La. 855, 84 So. 120.

Those advocating the constitutionality of the statute argue that the taxpayers' petition with its conditions or limitations was made nugatory, because of subsequent statutes and constitutional amendments and particularly by the provisions of the Constitution of 1921; and that the Constitutional Convention which rewrote the Constitution in 1921 restored to the state of Louisiana the police power that had been wrongfully delegated to the city of New Orleans by various statutes and articles 319 and 320 of the Constitution of 1898.

In the Kohnke Case, 109 La. 838, at page 871, 33 So. 793, 806, the court said:

"The decisions in the cases in 41 La. Ann. 156, 6 So. 592 (Police Board Case [State v. Shakespeare]), and 49 La. Ann. [114] 115, 21 So. 179 (Dock Board Case [Duffy v. City of New Orleans]), and 49 La. Ann. 1199, 22 So. 623 (the Drainage Commission Case [State v. Flower]), are not in point, for the reason that since they were rendered the words, 'and with the administration of the affairs of said corporation in whole or in part,' have been added to the article. To say that to administer the sewerage and the waterworks of a city is not to administer its 'affairs in whole or in part' would be to go squarely against a plain proposition."

In other words, the cited cases were differentiated only on the ground of the sweeping, broad, and general delegation of the police power of the state to the city of New Orleans, under articles 319 and 320 of the Constitution of 1898.

It is conceded by all parties that, if the Kohnke Case is still applicable *to the present provisions of* the Constitution of 1921, the Legislature was without authority, under the power reserved to it in section 35 of Act No. 6 of the Extra Session of 1899, article 313 of the Constitution of 1913, and sections 22 and 23 of article 14 of the Constitution of 1921 to change the membership of the sewerage and water board, and the court need go no further.

Act No. 111 of 1902 amended and re-enacted section 8 of Act No. 6 of the Extra Session of the General Assembly approved August 8, 1899, entitled: "An Act to make *effective* the vote and levy of the special tax by the property taxpayers of the City of New Orleans for water, sewerage and drainage purposes; by authorizing the capitalization of said tax by the issuance of

fifty-year bonds of the City of New Orleans under certain conditions and with certain privileges and restrictions, providing for the payment of the principal and interest thereof, for the disposition of the said bonds and proceeds thereof, and defining the powers and duties of the Board of Liquidation with reference thereto; by constituting and establishing a Sewerage and Water Board for the City of New Orleans and defining its powers, duties, rights and obligations with reference to the public, the City Council, the Board of Liquidation and the Drainage Commission," etc. The act gave the Governor the right to appoint the additional or new members.

It is said by Mr. Justice Provosty in the Kohnke Case, 109 La. 838, at pages 868 and 869, 33 So. 793, 805: "These articles of the Constitution [1898] read as follows: 'Art. 319. The electors of the city of New Orleans, and of any political corporation which may be established within the territory now, or which may hereafter be, embraced within the corporate limits of said city, shall have the right to choose the public officers, *who shall be charged with the exercise of the police power and with the administration* of the affairs of said corporations *in whole or in part.* [Italics ours.]

" 'Art. 320. This article shall not apply to the board of liquidation of the city debt nor shall it be construed as prohibiting the establishment of boards or commissions the members of which are elected by the council or appointed by the mayor with consent of the council. As to all other existing boards or commissions *affected by it,* said article shall take effect from and after the first municipal election which shall be held in the city of New Orleans after the adoption of this Constitution: provided, that nothing herein contained shall be construed as to prevent the Legislature from creating boards or commissions whose powers shall extend in and beyond the parish of Orleans, or as affecting present boards of that character, or the boards of directors of the public schools: provided, that hereafter, in creating any board with such powers, or in filling vacancies therein, at least two-thirds of the members thereof shall be from the city of New Orleans, and elected by the people or council thereof, or appointed by the mayor as hereinabove provided.'

"That the sewerage and water board is *'charged with the exercise of the police power and with the administration of the city of New Orleans in whole or in part,'* is undeniable, and not denied. It would seem, therefore, that *the act is in* direct contravention of these articles of the Constitution." (Italics ours.)

In other words, by article 319 of the Constitution of 1898, the state of Louisiana had been stripped of its entire police power and control over the sewerage

and water board of the city of New Orleans, and was powerless to reorganize it, even should its members become ever so guilty of acts of misfeasance or of acts of malfeasance in the discharge of their duties.

Under the Constitution of 1898, the city of New Orleans had erected within its limits a sovereignty within a sovereignty. This condition became so intolerable that the Governor addressed the following communication to the General Assembly:

"House Journal, 1920, p. 29, May 18, 1920:

"Message from the Governor.

"The following message from the Governor was received and read:

"State of Louisiana, Executive Department, Baton Rouge, La., May 18, 1920.

"To the Members of the General Assembly of the State of Louisiana:

"Gentlemen—I beg to herewith transmit for your information a memorandum of a number of the important needs of the State of Louisiana which will be submitted to you for your consideration.

"In my judgment it is much better to give you a statement of the various items, and then to follow it up with a special message covering each section, which you can read and refer to the proper committees for discussion and such action as they see fit.

"My earnest wish is that by thorough and frank expressions of our views and a united determination to work for the welfare of Louisiana, we will avoid all friction and accomplish results which will permanently benefit both State and Nation, and your hearty co-operation to that end is sincerely requested.

"Respectfully submitted,

"Jno. M. Parker, Governor. * * *

"5. Political Program.

"h. A Constitutional Convention.
"(1) To be held in 1921.
"(2) Delegates to be elected in February, 1921.
"(3) How membership be based.
"(4) Discussion of possible program.
"i. Much of reform program of administration must be left to be worked out by this Convention, such as assessments, judiciary, courts, and civil service for both State and municipalities.

"See, also, Senate Journal, May 18, 1920, p. 37.

"Senate Journal, 1920, p. 548, Wednesday, June 30, 1920:

"Governor's Message.

"State of Louisiana, Executive Department, Baton Rouge, La., June 18, 1920.

"To the Honorable Members of the General Assembly:

"Gentlemen—In compliance with my promise to the people of Louisiana to do all in my power for the destruction of

boss rule and ringism in Louisiana, and particularly the City of New Orleans, I respectfully direct the attention of the members of the General Assembly to House Bill No. 33, by Mr. Claiborne, and strongly urge that this bill be enacted into law.

"With the thought uppermost in my mind that the people of Louisiana earnestly desire that an end be put to ringrule; that the government of New Orleans be returned to the people, and the State at large be freed from an overwhelming and concentrated power, I have been at great pains to cause investigations to be made seeking a cure for the evils complained of, *I find at every turn constitutional inhibitions written therein with the most obvious intent of insuring to the bosses of the city freedom from legislative interference or legislative power to protect the people either of the State or city.* While I have found it possible to suggest some practical legislation, I have concluded, upon the advice of the ablest lawyers, that to accomplish the full purpose of the people *will require many constitutional changes.*

"Beyond the primary purpose of completing the destruction of bossism in New Orleans, it is important that there be a reorganization and reformation of the city government of New Orleans to bring it up to date, equal to modern conditions and able adequately to meet the city's great opportunities.

"Louisiana is situated unlike any other State in the Union in that it has a dominant great city *which has become an overwhelming and dangerous element to State government if not intelligently dealt with.* Furthermore, in this city, the utilities under public control place a large portion of the electorate of the city on public pay rolls.

"*This presents a situation which should have the most careful attention of the coming Constitutional Convention and your next legislative session in order that the city of New Orleans may be protected in all her rights and yet may not become a menace to the balance of the State.*

"I have, therefore, caused to be prepared and introduced in the House of Representatives House Bill No. 338, by Mr. Claiborne, which proposes the creation of a commission to investigate the government of the city of New Orleans and all its subsidiary and auxiliary boards and offices with a view to eliminating what is undesirable and out of date, and retaining that which has been found by experience to be useful as an outgrowth of the character and customs of our people; and to coordinate the whole with the final view of retaining a necessary autonomy for the city, the power in her people to change their administration at their will, to permit her to play her proper and legitimate part in the government of the State, but not to become a menace to the political welfare of its people.

*"I ask that this commission be instructed to report to the Constitutional Convention and the next session of the General Assembly and to the Governor, and* that it be adequately financed and given power to make the investigations which will be necessary if it is to present a constructive program which will be of real value to the Constitutional Convention and your honorable body at its next session. (Italics ours.)

"Respectfully,

"Jno. M. Parker, Governor.

"See, also, House Journal, 1920, p. 336." (Long's Constitution, 1812–1930, pp. 680, 681.)

When the Constitutional Convention convened in Baton Rouge in the year 1921, under the administration of Gov. John M. Parker, articles 319 and 320 of the Constitution of 1898 were rewritten in the Constitution of 1921 in section 22 of article 14 of the organic law, so as to read as follows: "The electors of the City of New Orleans and of any political corporation which may be established within the territory now, or which may hereafter be embraced within the corporate limits of said city, shall have the right to choose their public officers" ("who shall be *charged with the exercise of the police power and with the administration* of the affairs of said corporation *in whole or in part"),* contained in article 319 of the Constitution of 1898 being omitted. *"This section* shall not prohibit the election of any officer by the Council or appointment by the Mayor, nor the filling of vacancies for the unexpired term as now or hereafter provided by law; nor shall it apply to the Board of Liquidation, City Debt, or to any Board of Civil Service Commissioners or Examiners; *nor shall it be construed as restricting the police power of the State, or as prohibiting the Legislature from appointing or authorizing the appointment of, any board or commission with full authority* in the City of New Orleans other than that of controlling *the ordinary governmental functions of municipal government."*

Section 22 of article 14 of the Constitution of 1921 does not merely reinvest the state with its inherent and plenary police power, but it goes much further and prohibits the courts of the state from *"construing this section"* as a limitation upon the state's police power, in so far as the city of New Orleans is concerned. Thus the members of the Constitutional Convention of 1921 restored the state's sovereign power over the city of New Orleans and the sewerage and water board.

Again in 1932, the city of New Orleans attempted to reinvest itself with plenary police power, by the passage of. Act No. 82 of 1932, which purports to amend and re-enact section 1 of Act No. 159 of 1912, the charter of the city of New Orleans, reading in part as follows: "The City of New Orleans *shall also have* all powers, privileges and functions which by or pursuant to the Constitution of this

State have been, or could be, granted to, or exercised by any city, and shall have power to pass ordinances, and to exercise full police power in connection with any function of municipal government within the territorial limits of said City, including the right, power and authority, to pass ordinances on all subject matters, including subject matters which the Legislature has reserved to itself the right to regulate, but has not regulated, or has not fully regulated, or on which the Legislature has reserved to itself the right to legislate, but has not legislated, or has passed general or special laws which do not cover the entire subject matter, and on any and all other subject matters without exception, regardless of whether or not the Legislature has enacted special or general laws upon the same subject matter, subject only to the limitation that the provisions of said ordinances shall not directly conflict with the provisions of any state laws upon the same subject matter."

This statute was amended by the Legislature by Act No. 7 of the First Extra Session of 1934.

All of the Constitutions of this state, except the Constitution of 1868, down to the adoption of the Constitution of 1921, have contained a so-called "home rule" provision.

But it was not until the adoption of the Constitution of 1898 that these "home rule" provisions, in varying form and language, culminated in the centralization in the city of New Orleans of the almost exclusive exercise of the police power of the state.

The public history of the State, of which this Court can take judicial cognizance, shows that section 22 of article 14 of the present Constitution was written into the organic law of this state in the year 1921, for the purpose of divesting the city of New Orleans of the sweeping authority which had been granted to it for the first time by article 319 of the Constitution of 1898, and to reinvest the state with the right to exercise and retain its unabridged and unimpaired police power in the governmental affairs of the city of New Orleans.

We do not dispute the correctness of the decision of this court in the Kohnke Case, because the Constitution of 1898 justified this court's ruling in that case.

In State ex rel. Nicholls v. Shakespeare (1889) 41 La. Ann. 156, 6 So. 592, 597, it is said: "The corporation of the city of New Orleans was created by the state for political purposes, *having subordinate and local powers of legislation. Those matters, which are of concern to the state at large, although exercised within defined limits,*—such as the administration of justice, *the preservation of the public health,* and the regulation of public morals,—*are still under legislative control,* while the enforcement of municipal by-laws are matters for purely local legisla-

tion and control. *In its public capacity as a part of the state machinery, the corporation of the city of New Orleans owes a responsibility to the state government in the performance of acts for the public benefit, and in the regulation of this responsibility—the manner in which these acts shall be done, and by whom—the authority of the* state is supreme." (Italics ours.)

In State v. Flower (1897) 49 La. Ann. 1199, at page 1204, 22 So. 623, 625, it is said in the body of the decision: "The police power given to the state to *protect the public health,* we cannot appreciate, is to be abridged by a constitutional provision dealing with the *ordinary functions* of the police administration of the city, and confiding such duties to the agents selected by the citizens." (Italics ours.)

In the Flower Case, 49 La. Ann. 1199, at page 1205, 22 So. 623, 626, it is stated:

"It is not at all novel in our legislation *to appoint state officers* for the performance of functions in this city [New Orleans] relating to subjects of more than the interest attaching to ordinary police functions of the city officials. * * *

"The lesson of our past legislation is that the legislative power over some subjects, and the right to designate the officials and instrumentalities by which such legislation is to be *executed* in this city, is *wholly unimpaired by the constitutional grant of appointive power* to the citizen of this city."

It is also provided in section 18 of article 19 of the Constitution of 1921 that *"the exercise of the police power of the State shall never be abridged."* (Italics ours.)

As said in State v. New Orleans (1922) 151 La. 24, bottom page 39, top of page 40, 91 So. 533, 539: "That does not mean that the police power of the state shall not be delegated to an administrative board or commission, or to a municipality or other political corporation. It means that the *Legislature shall not irrevocably surrender the police power of the state,* and that a delegation of any part of the police power to an administrative board or commission, or to a municipality or other political corporation, *shall be always subject to revocation by the Legislature."* (Italics ours.)

Municipalities are established for public purposes alone, and by specific grant of charter rights by the Legislature are empowered to administer a part of the sovereign power of the state over such territory as the municipality may embrace. They are mere creatures of the Legislature and are entirely subject to the legislative will. Laws which establish and regulate municipal corporations *are not contracts;* they are ordinary acts of legislation, and the powers and authority which they confer are nothing more than mandates of the sovereign power, the state,

and those laws may be repealed or altered at the will of the Legislature, except so far as the repeal may affect the rights of third persons acquired under them. Police Jury v. Shreveport, 5 La. Ann. 661, 665; Reynolds v. Baldwin, 1 La. Ann. 162; State ex rel. Hernandez v. Flanders, 24 La. Ann. 57, 61; New Orleans, M. & C. R. Co. v. New Orleans, 26 La. Ann. 487; Diamond v. Cain, 21 La. Ann. 309.

■ It is only on the theory that the stipulation of the taxpayers in their petition gave rise *to a contract* between the state and the taxpayers or *to a contract* between the city, the taxpayers, and the bondholders, and, as such, became inviolable, that this contention would have any weight, but this argument, as far as any contract with the state is concerned, has been absolutely refuted by the decisions of this court in State v. Kohnke, 109 La. 838, 33 So. 793, and in Realty Owners' Protective Alliance v. City of New Orleans, 165 La. 159, 115 So. 444.

Both of these cases hold to the contrary on the ground that such statutes are public laws relating to public subjects, and their enactment does not establish *the existence of contractual relations,* and cite the decision of the United States Supreme Court in Newton v. Mahoning Company, 100 U. S. 548, 557, 25 L. Ed. 710, wherein the court held that a statute of similar tenor did not create a contract, but was "a public law relating to a public subject within the domain of the general legislative power of the State, and involving the public rights and public welfare of the entire community affected by it."

Clearly, Act No. 6 of 1899, and amendatory acts, dealing with the water supply, sewerage disposal, and drainage of the city of New Orleans, the most highly concentrated populous section of the state, are matters of such vital importance to the general health, general welfare, and general good of the public, not only of the city of New Orleans, but the state at large, are public laws relating to a public subject, and involve public rights, and the public welfare of the entire section affected by them.

■ There have been wide and repeated departures through constitutional amendments, from the text of the petition of the taxpayers of the city of New Orleans in pursuance of which the sewerage and water board was brought into existence.

The property taxpayers' petition contemplated the retirement of the bond issue in fifty years from July 1, 1900; but the taxes voted to meet this issue and the maturities of the issues themselves were continued and extended to the year 1962, or twelve years beyond the period stipulated for by the taxpayers' petition.

The restriction of the bond issue to the original sum of $12,000,000, as stipulated for by section 2 of Act No. 6 of 1899, Ex. Sess., was raised subsequently

to the sum of $29,000,000. Act No. 19 of 1906, p. 26; Act No. 116 of 1908, p. 174; Act No. 3 of 1927, Ex. Sess.

The stipulation in the property taxpayers' petition that the taxes should be diminished or reduced to a sum sufficient to take care of such obligations should the assessment of the city of New Orleans produce a revenue more than sufficient to pay the obligations accruing under the bonds was not only not recognized by Act No. 6 of 1899, Ex. Sess., but the act contained an entirely contrary provision.

The Legislature, instead of adhering to the requirement in the taxpayers' petition that members of a former drainage commission of the city of New Orleans should be named among the members of the sewerage and water board to be created under the act, varied the petition by stipulating that if the drainage commission of the city of New Orleans should be abolished, its erstwhile members should be discontinued as members of the sewerage and water board.

These are radical departures from the terms and conditions of the taxpayers' petition. If a modification as to one essential detail of the petition would have the effect of annulling the transactions based thereon, then these numerous radical departures from the original stipulations and conditions of the taxpayers' petition would necessarily be a cumulation of reasons that would militate against the legality of the transactions had in pursuance thereof.

However, we are not impressed with the contention that any of these departures, radical or otherwise, would strike the proceedings predicated thereon with nullity, since in each instance the change or modification was effected through means of a constitutional amendment, duly ratified, approved, and adopted by the vote of the electors of the state, including the electors of the city of New Orleans, the bulk of whom were signatories of the property taxpayers' petition.

Neither the Legislature nor the people themselves can bargain away the power to regulate the public health and morals, or legislative discretion concerning such regulation, and the power is inalienable even by express grant. It is elementary and fundamental that the state's police power cannot be bartered away *by contract;* and that the clauses of the Constitutions, guaranteeing due process of law and vested or contract rights against impairment, have always yielded to its proper exercise. Osborn v. Nicholson, 13 Wall. 654, 660, 20 L. Ed. 689; Boston Beer Co. v. Massachusetts, 97 U. S. 25, 24 L. Ed. 989; Stone v. Mississippi, 101 U. S. 814, 819, 25 L. Ed. 1079; Boyd v. Alabama, 94 U. S. 645, 650, 24 L. Ed. 302; New Orleans v. New Orleans Water-Works Co., 142 U. S. 79, 12 S. Ct. 142, 35 L. Ed. 943; Atlantic Coast Line R. Co. v. Golds-

boro, 232 U. S. 548, 34 S. Ct. 364, 58 L. Ed. 721; Manigault v. Springs, 199 U. S. 473, 26 S. Ct. 127, 50 L. Ed. 274; Louisville & Nashville R. Co. v. Mottley, 219 U. S. 467, 31 S. Ct. 265, 55 L. Ed. 297; Hudson County Water Co. v. Mc-Carter, 209 U. S. 349, 28 S. Ct. 529, 52 L. Ed. 828, 14 Ann. Cas. 560; Rail & River Coal Co. v. Yaple, 236 U. S. 338, 35 S. Ct. 359, 59 L. Ed. 607; Noble State Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487; Perry v. United States, 294 U. S. 330, 55 S. Ct. 432, 79 L. Ed. ——, 95 A. L. R. 1335; Norman v. Baltimore & O. R. Co., 294 U. S. 240, 55 S. Ct. 407, 79 L. Ed. ——, 95 A. L. R. 1352; Nortz v. United States, 294 U. S. 317, 55 S. Ct. 428, 79 L. Ed. ——, 95 A. L. R. 1346; Treigle v. Acme Homestead Ass'n, 181 La. 941, 160 So. 637; Harris v. Monroe Building & Loan Ass'n (La. App.) 154 So. 503.

The state's police power is the very soul and essence of its sovereignty. Without it, the sovereign becomes the subject; the master becomes the servant.

If this court by its decision could limit *perpetually* the police power of the state, it could destroy the state itself. This court is but the mere creature of the state. It derives its existence, its powers, and its jurisdiction from the sovereign.

If "neither the Legislature nor the people themselves" can bargain away the po-lice power of the state, even by "express grant," it is certain that this court is powerless to do so.

For this reason, no private contract of individuals, when affected by the police power of the state, can ever become *perpetual,* to the detriment of the state.

When the Constitutional Convention assembled at Baton Rouge in the year 1921, its members were aware of the abridgement of the police power of the state by articles 319 and 320 of the Constitution of 1898. They were also aware of the decision of this court in the Kohnke Case, since, in restoring to the state its "unrestricted" police power as to the city of New Orleans, in section 22 of article 14 of the Constitution of 1921, the Convention omitted from that section the *identical clause* in article 319 of the Constitution of 1898, upon which the Kohnke Case had been decided by this court.

But the Convention, at the same time, in section 23 of article 14 of the Constitution of 1921, fully protected the contract rights of the holders of the sewerage and water board bonds, by providing in that section that "*the special tax for public improvements, voted by the property taxpayers of the City of New Orleans, on June 6, 1899, and levied by the City Council by Ordinance No. 15,-391, approved June 22, 1899, is hereby ratified, and its validity shall never be questioned.* The special act adopted by

the Legislature at the special session held on August 8, 1899, constituting the Sewerage and Water Board of the City of New Orleans, *authorizing the City of New Orleans to issue bonds and providing the means to pay the principal and interest thereof, and for other purposes cognate to the purposes of the special tax aforesaid,* is hereby ratified and approved, specially including therein reserved *legislative right· to amend the same,"* etc.

In section 35 of Act No. 6 of 1899, Ex. Sess., the right and power of the General Assembly is reserved "to amend this act in any respect not violative of *the conditions upon which the said special tax was voted by the property taxpayers of the City of New Orleans and not impairing the vested rights or the contract rights of the holders of the bonds issued under its provisions."*

And what was the purpose of section 23 of article 14 of the Constitution of 1921, except that of "ratifying and carrying into effect the special tax levied in the City of New Orleans for certain public improvements, and to establish therein public systems of sewerage and water, *the issuance of bonds therefor* and the providing *the ways and means to pay* the principal and interest of said bonds?"

Such was the declared purpose of the amendment proposed to the Constitution by Act No. 4 of the Special Session of 1899, since the language of section 1 of this Joint Resolution and that of section 23 of article 14 of the Constitution of 1921 is identical.

As said in State v. Kohnke, 109 La. 838, 842, 33 So. 793, 794: "We do not find that there has been *any contract entered into between the state and the taxpayers of New Orleans in ·connection with this tax or the administration of same.* These taxpayers devised a scheme for the levy of the tax and the administration of the proceeds thereof, and applied to the Legislature for the requisite legislation to carry the scheme into execution. The Legislature met in extra session, and provided the legislation. This was all. No one asked the Legislature to bind the state to any contract, or dreamed that it was doing so. No consideration other than such as lies at the bottom of all legislation—*that is, the public welfare*—moved the state in the matter, either directly or indirectly. The state was under no obligation in the premises, and it entered into none. It simply legislated."

The bonds were not issued by the sewerage and water board, but "the full faith and credit" of the city of New Orleans are pledged for the payment of the same, and the contract rights of the bondholders have been fully protected by section 23 of article 14 of the Constitution of 1921.

The alleged objectionable portion of Act No. 36 of the 2d Extra Session of

1934 relates merely to the provisions *which alter the personnel* of that board.

The act, in our opinion, is clearly the legitimate exertion *of the restored* police power of the state under the present Constitution; and does not, in any manner, impinge upon the powers and the authority of the sewerage and water board of New Orleans, as delegated to it by Act No. 6 of 1899, Ex. Sess., and by subsequent amendatory statutes and constitutional provisions; nor does the act, in any respect, impair the vested rights or contract rights of the holders of the bonds issued.

A state law divesting vested rights violates no constitutional provision where it does not impair the obligation of a contract; it is only *when legislation acts upon contracts,* as distinct from vested rights, that the prohibition against impairment of the obligation is infringed. Long Island, etc., Co. v. Brooklyn, 166 U. S. 685, 691, 17 S. Ct. 718, 41 L. Ed. 1165; Baltimore, etc., R. Co. v. Nesbit, 10 How. 395, 401, 13 L. Ed. 469; Green v. Biddle, 8 Wheat. 1, 89, 5 L. Ed. 547; Satterlee v. Matthewson, 2 Pet. 380, 413, 7 L. Ed. 458; Charles River Bridge v. Warren Bridge, 11 Pet. 420, 582, 9 L. Ed. 773.

"Where the legal or equitable rights of a party are not in any way touched, and he is in no way injured, he cannot be heard to complain of the impairment of the obligation of his contract, as a mere abstract proposition." Hooker v. Burr, 194 U. S. 415, 422, 24 S. Ct. 706, 709, 48 L. Ed. 1046; Walsh v. Columbus, etc., R. Co., 176 U. S. 469, 479, 20 S. Ct. 393, 44 L. Ed. 548; Williams v. Eggleston, 170 U. S. 304, 309, 18 S. Ct. 617, 42 L. Ed. 1047; Hagar v. Reclamation Dist., 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569; Williams v. Hogood, 98 U. S. 72, 74, 25 L. Ed. 51.

As we do not find any limitation in the Constitution of Louisiana which would have precluded the Legislature from enacting Act No. 36, approved November 21, 1934, the Legislature has acted in the lawful exercise of the legislative power.

As to the due process clauses, Amendments 5 and 14, U. S. Constitution, and the contract clauses, section 10, art. 1, U. S. Constitution, it is necessary to determine whether or not a change in the membership of the sewerage and water board would impair the obligation of the bonds of the city of New Orleans issued by the board of liquidation of the city debt for sewerage, water, and drainage purposes.

The bonds issued under section 1 of Act No. 6 of 1899, Ex. Sess., were to be the bonds of the city of New Orleans, to be styled the "Public Improvement Bonds of the City of New Orleans."

Act No. 19 of 1906, which authorized $8,000,000 of these sewerage, water, and drainage bonds, likewise provided that

they should be bonds of the city of New Orleans and issued by the board of liquidation of the city debt. The same is true of Act No. 116 of 1908, a constitutional amendment dealing with the same $8,000,000 of bonds, and the same is true of Act No. 3 of 1927, Ex. Sess.

The State Constitution (Act No. 4 of 1899, Ex Sess., article 313 of the Constitution of 1913, and section 23 of article 14 of 1921) provides that *"the validity of the special tax shall never be questioned."*

The taxpayer, therefore, would be absolutely without right to contest the tax, no matter what the conditions of its levy, once it was voted upon and levied, and once the provision went into the Constitution.

As long as the board of liquidation collects the tax, it must comply with the obligation of the bonds by paying them in principal and interest as they may mature, and until they default, the bondholder will have no right to come before the court, and assert any impairment of the obligation of his contract.

It is specifically declared in section 6 of Act No. 6 of 1899, Ex. Sess., that "said taxes and their proper levy and collection are hereby declared *to be the vested right* of all the holders of bonds issued under this act"; and in section 7 of Act No. 110 of 1890, which is a part of the Constitution of Louisiana (section 24 of art. 14, as amended by Act

No. 182 of 1924), it is also specifically provided that "any court of competent jurisdiction, shall, on application of any bondholder, have power to decree the levy of said special tax throughout the said territory, and to have the same collected by the sheriff, or executive officer of the court, and the proceeds applied to the payment of the interest and principal of said bonds. In case any such decree is entered, the sheriff or executive officer of the court, shall have all the powers, rights and authority granted by law by the State to her own tax collectors."

This provision was extended to the powers and duties of the board of liquidation of the city debt in connection with the 2-mill tax by section 6 of Act No. 6 of 1899.

The bondholders need never worry about the refusal of the taxpayer to pay the tax, or about any suit to prevent its levy and collection, *since the validity of the tax may never be questioned.*

So the *"vested rights or contract rights"* which the holders of the bonds issued have, and which may not be impaired by amendment of Act No. 6 of 1899, is the *vested right* in the 2-mill tax and its proper levy and collection, and not a vested right in the composition of the sewerage and water board of the city of New Orleans.

The bondholder is not concerned at all with the membership of the sewerage and water board, which was to expend

the proceeds of the sale of the bonds and the surplus of the funds remaining after the payment of the interest. The tax is collected by the city of New Orleans and paid day by day to the board of liquidation of the city debt (Act No. 110 of 1890, extended to the 2-mill tax by section 6 of Act No. 6 of 1899, Ex. Sess.), and the board of liquidation is specifically charged with the payment of the interest and principal of the bonds (section 5 of Act No. 6 of 1899, as amended by Acts Nos. 85 and 111 of 1902, and by Act No. 23 of 1910).

The sewerage and water board has no jurisdiction whatever over any portion of the tax or to which the bondholder has a pledge, and the taxpayer has no right to contest the validity of the tax.

▬ The obligation of a contract embraces the remedy, which includes all legal means allowed by law at the creation of the contract to enforce its performance or redress the injury resulting from its nonperformance. Collins v. Collins, 79 Ky. 88; Lapsley v. Brashears, 4 Litt. (Ky.) 47.

By the obligation of the contract is meant the means, which at time of its creation, the law affords for its enforcement. Nelson v. Police Jury, 111 U. S. 716, 720, 4 S. Ct. 648, 28 L. Ed. 574, 575; Louisiana ex rel. Ranger v. New Orleans, 102 U. S. 203, 206, 26 L. Ed. 132.

The sewerage and water board forms no part of *the means* provided by law by which the contract can be enforced; and a change in its membership cannot possibly affect its enforcement.

The composition of the sewerage and water board is not, therefore, one of "the purposes *cognate* to the purposes of the special tax" which may not be amended by the Legislature, as provided by section 23 of article 14 of the Constitution of 1921, protecting the "vested rights or contract rights" of the bondholders.

And particularly is this true as in the Kohnke Case it is specifically declared "that the sewerage and water board *is 'charged with the exercise of the police power* and with the administration of the city of New Orleans *in whole or in part,'* is undeniable, and not denied"; and the Legislature, in passing Act No. 36 of the 2d Extra Session of 1934, clearly acted under the Constitution of 1921 restoring to the state its *"unrestricted"* police power as to the city of New Orleans. in altering the personnel of the sewerage and water board of that city in the case at bar.

It follows, necessarily, that even if it be conceded that the composition of the sewerage and water board can, by any possibility, be construed as "a vested right," that such alleged "vested right" must yield to the police power of the state in enacting that act.

In the case of State v. Billhartz, 146 La. 855, 84 So. 120, it was pointed out that Act No. 6 of the Extra Session of 1899, having been made a constitutional amendment with reservation of the police power to the state, was unprecedented. In other words, the city of New Orleans and the sewerage and water board had been placed in a special or preferred position by having the police power of the state delegated to the city. The members of the Constitutional Convention of 1921 simply corrected this discrimination in favor of the city of New Orleans, for no municipality in the state enjoyed it, and placed the city of New Orleans in the same category as all other municipalities in the state, as far as the state having the right to exercise its police power was concerned.

Certain property taxpayers during the year 1899 petitioned the mayor and council of the city of New Orleans to levy a 2-mill tax and create a sewerage and water board. This board was to have charge of the sewerage disposal, drainage, and water supply of the city. The drainage commission theretofore was created by Act No. 114 of 1896. The substance of that petition which was either violated or nullified by subsequent ordinances, statutes, and constitutional amendments purporting to give effect to the same was as follows:

The taxpayers' petition requested the authorities to levy a tax of 2 mills for forty-three years, to be used for the acquiring or construction of a drainage, sewerage, and water system in the city; that when a vote of approval was obtained by the people, the council secure legislative and constitutional authority, in order to capitalize on the then basis of assessment in the city the proceeds of the 2-mill tax, which was to be augmented on the same basis by one-half the surplus of an already existing 1 per cent. debt tax then dedicated for drainage purposes, by issuing fifty-year bonds bearing not more *than 4 per cent. interest,* and to be sold only as needed at not less than par and accrued interest; that if the assessed value of the city should increase to such a figure as to make the one-half surplus of the already 1 per cent. debt existing 10-mill tax enough to pay the whole or larger portion of the interest on the bonds to be so issued, for such years that there be "a corresponding diminution in the amount of the special tax"; that the board of liquidation of the city debt have authority for the issuance and sale of the bonds for the sewerage and water board which was to be composed of the members of the drainage commission and one taxpayer from each of the seven municipal districts; and that the funds realized therefrom be used for the purpose of constructing and operating the drainage, sewerage, and water systems of New Orleans.

The city council submitted the matter to the vote of the people to determine

if the special 2-mill tax would be voted for forty-three years to be devoted to water, sewerage, and drainage under the terms and conditions set forth in the taxpayers' petition. The people were also asked to indicate on a separate ballot whether or not they wanted the seven taxpayers from each municipal district elected or appointed.

On July 6, 1899, the voters approved the matter and signified that they wanted the seven taxpayer members appointed by the mayor, with the approval of the council.

The city then adopted an ordinance which levied a 2-mill tax and constituted the sewerage and water board.

Gov. Foster issued a proclamation convening the Legislature on August 8, 1899. Act No. 6 of the Extra Session of 1899 was enacted. The beginning of the title of the act reads: "To make effective the vote and levy of the special tax by the property tax payers of the City of New Orleans for water, sewerage and drainage purposes," etc. Act No. 4 of the Extra Session of 1899 was also passed, in order that Act No. 6 of the Extra Session of 1899 might be submitted to the people to be ratified as a constitutional amendment.

Act No. 6 was in part directly contrary to the petition of the taxpayers and in part beyond the scope of the petition.

. The petition stipulates that members of the drainage commission should be mem-

bers of the sewerage and water board. The act provides that if the drainage commission should be abolished, the members thereof should be discontinued as members of the sewerage and water board, except certain ex officio municipal officers who would remain members of the board. The petition stipulates that if the assessment of the city of New Orleans should become large enough so that the revenues derived from the existing 1 per cent. debt tax should be sufficient to pay the interest on the bonds issued, or the greater part of the same, the 2-mill tax should be abolished to such an extent as the surplus funds from the 1 per cent. debt tax would take care of the bond obligation. Act No. 6 not only failed to contain that stipulation, but made an entirely different provision on the subject. There are other variations which also show that the Legislature did not enact verbatim the petition of the taxpayers.

Act No. 6 provided for bonds not to exceed $12,000,000. The constitutional amendment, Act No. 19 of 1906, provided that if the drainage, sewerage, and water systems did not require all of the proceeds of the 2-mill tax, that the balance should be *expended by the city of New Orleans for paving purposes.* It also contains other provisions contrary to the taxpayers' petition.

Constitutional amendment, Act No. 116 of 1908, authorized the issuance of an additional $8,000,000 of bonds. It also provided that a commission of 6 per cent.

might be deducted from the par value and accrued interest which was to be paid for the bonds as stipulated in the taxpayers' petition, thus allowing the council to sell them for 94 cents on the dollar. Apparently, realizing that there had been obvious and serious departures from the stipulations of the taxpayers' petition, the lawmakers in the amendment of 1908 placed the following validating clause: "All provisions of the present Constitution of the State in conflict with the provisions of said Act of 1908 and with this Amendment, are to that extent and for that purpose, only repealed."

Later, constitutional amendment, Act No. 3 of 1927, Ex. Sess., authorized an additional $9,000,000 bond issue against the taxes voted, *to bear 5 per cent. interest.*

So, when the property taxpayers' petition with its terms and conditions is taken as a basis and is compared with the law as it exists at the present time, it appears that a great many of the most important provisions in the petition have been deleted by statutes and constitutional amendments. The stipulation of the petition governing the membership of the board was ignored; the provisions regarding the rate of interest and the price for which the bonds were to be sold were abrogated; the proviso that surplus funds from the already existing 1 per cent. debt tax should be used to diminish the amount of the special 2-mill tax was contradicted and nullified; and the provision that the sewerage and water facilities were to be placed in certain marked out lots and blocks were not observed.

All of these variations and departures which took place prior to 1913 were validated and ratified by article 313 of the Constitution of 1913.

If the city of New Orleans, members of the sewerage and water board, and members of the board of liquidation of the city debt could propose and advocate legislation which was passed by the Legislature and subsequently by popular vote given the status of constitutional amendments which changed the terms and conditions of the original taxpayers' petition, then the petition of taxpayers was made nugatory with the taxpayers' acquiescence or consent and the Constitutional Convention of 1921 could legally invest the state with the police or reserve power previously delegated to the city of New Orleans and the sewerage and water board. To hold otherwise would jeopardize the validity of the respective bond issues subsequent to the original one. For, if the taxpayers' petition is to be given that sanctity which is contended for by counsel, anything done beyond the terms and conditions of the petition, upon which basis the 2-mill tax was voted, would be unconstitutional, null, and void.

In the foregoing discussion, we have disposed of several other incidental questions raised that fall as a result of our conclusions with reference to the main constitutional points.

The next question presented arises out of the interpretation to be placed upon the last part of section 22 of article 14 of the Constitution of 1921 hereinabove quoted, i. e., whether or not the operation of the sewerage, water, and drainage systems of the city of New Orleans are "ordinary governmental functions of municipal government?"

The history of the sewerage and water board of the city of New Orleans shows that it was created for the purpose of avoiding a repetition of malaria, typhoid, and yellow fever epidemics that had plagued people of the city of New Orleans, the state of Louisiana, and the entire South. Gov. Foster's proclamation to the General Assembly of the state of Louisiana, dated August 8, 1899, contained in the Journal of the House of Representatives, on page 5, requested the enactment of Acts Nos. 4 and 6 of the Extra Session of 1899, since the New Orleans taxpayers had voted a 2-mill tax to create the sewerage and water board, believing that this legislation was not only for the benefit of the people of the city of New Orleans, but for the benefit of the whole state, as it was a sanitation and health regulation or measure. The Legislature was acting under its reserve or police power in creating the sewerage and water board, because it was a matter that affected the general welfare and health of the people throughout the state.

The water supply, drainage, and sewerage disposal of New Orleans is handled by the sewerage and water board; the state police power is involved, since it has the right to protect the general public from pestilences, epidemics, contagious diseases such as malaria, typhoid, and yellow fevers, thereby promoting the public weal. Medical science has definitely determined that yellow, typhoid, and malaria fevers are caused by germs and insects bred and propagated as a result of improper drainage, inadequate and faulty sewerage disposal, and contaminated drinking water. In order to avoid the further repetition of the spread of those diseases, the water supply, sewerage disposal, and drainage of the city was placed with the sewerage and water board. The prevalence of these maladies had caused general quarantine, paralyzing public and private business and causing general public loss.

New Orleans is the largest city in the South, having a population of about 400,-000 persons, and is easily accessible by water route, as well as by land transportation. Ships from all parts of the world dock in its port. It is a cosmopolitan city and a great number of persons visit it annually. So, it would seem that the operation of the sewerage and water board controlling the drainage, sewerage, and water systems of the city of New Orleans is not an ordinary governmental function of the municipal government. It vitally concerns and affects the health and lives of the people throughout the state. The operation of this board is the per-

formance of a governmental function delegated to it by the sovereign state. This is the interpretation that has been placed upon the duties and functions that it performs by the board itself.

In several cases where citizens sued the sewerage and water board for damages for personal injuries said to have resulted from the negligence and carelessness of its officials, agents, or employees, this board has pleaded exemption from tort liability on the ground that it was engaged in the performance of a governmental function as distinguished from a municipal function. Manguno v. City of New Orleans (La. App.) 155 So. 41, at page 46; Rome v. London & Lancashire Ind. Co. of Am. (La. App.) 156 So. 64. This court refused writs in both of these cases.

While it is true in the cases cited in the Manguno Case, 155 So. 41, at page 46 that the court held that the plea of exemption came too late, having been raised for the first time in the appellate court, it shows that the members of the board and its attorneys consider that its functions were governmental and not municipal.

It has been held that the operation of the garbage disposal system is a governmental function delegated to the city by the sovereign state and that the city was exempt from tort liability. Manguno v. City of New Orleans, supra.

In the Kohnke Case it is stated that this court will take judicial notice of the history of activities in connection with the sewerage and water board. It is a matter of public record and general knowledge that the sewerage and water board for a period of over seventeen years has sold water to the city of Gretna, a municipality incorporated under the provisions of Act No. 136 of 1898, and consisting of the first, second, and third wards of the parish of Jefferson, La., having according to the United States census of 1930 a population of 10,265 inhabitants.

The sewerage and water board also sold water for more than ten years to the Jefferson Water Company, which served the people of the seventh and eighth wards of the parish of Jefferson, generally called East End and Metairie Ridge, respectively,. unincorporated towns, having a population according to the United States census of 1930—seventh ward, 3,414, and eighth ward, 6,517 persons.

This board further sold water to Arabi, an unincorporated town in St. Bernard parish, La., having a population of 3,300 persons; and to Violet, St. Bernard parish, La., an unincorporated town, ten miles from the city limits of New Orleans, having a population of about 2,700 persons, for four years.

These two parishes, Jefferson and St. Bernard, adjoin the city of New Orleans.

The sewerage and water board apparently construed the provisions of section 17 of Act No. 6 of the Extra Session of 1899 and section 23 of article 14, Constitution of 1921, as giving it the right to furnish water to the people in these adjoining parishes. These activities on the part of the board show that even the members of the board and its legal advisors felt that its functions were not purely local.

We conclude that the operation of the sewerage and water board controlling the drainage, sewerage, and water supply of New Orleans is not an ordinary governmental function of the municipal government, but the performance of a governmental function delegated to that board and the city of New Orleans by the sovereign state of Louisiana.

In the case of State ex rel. Nicholls, Governor, v. Shakespeare, Mayor of the City of New Orleans, et al., 41 La. Ann. 156, 6 So. 592, 598, the relator sought a writ of mandamus to enforce the execution of Act No. 63 of 1888, entitled, "An Act Creating a Police Board for the City of New Orleans, and defining its powers." Respondents, the mayor and commission council of New Orleans, refused to give effect to the act, contending that it was unconstitutional, contravening article 253 of the Constitution of 1879, which reads, in part, as follows:

"The citizens of the city of New Orleans or any political corporation which may be created with in its limits shall have the right to appoint the several public officers necessary for the administration of the police of said city, pursuant to the mode of election which shall be provided by the General Assembly," etc.

The court held that when in 1882 the Legislature enacted the charter of the city of New Orleans, it did so in furtherance of the authority delegated by the Constitution and did not exhaust the powers thus conferred. The state had preserved the right of amending and changing the charter in all respects, provided that in doing so there was no infringement of constitutional inhibition. The court concluded that the Legislature had lawfully exercised the reserved powers of the state and transgressed no constitutional limitations. The court said:

"Had the provisions of Act 63 of 1888 been incorporated into Act No. 20 of 1882 [the charter of New Orleans], we are of the opinion that no question of the unconstitutionality of the act could have been urged. * * *

"As a principle of constitutional law it is now well settled that the police powers of the state for the protection of the public health, public safety, and public morals are (is) inalienable.

"Act 63 of 1888 comes under the police powers of the state; and the police board therein created is empowered to regulate, as provided for in said act, the public safety, public health, and pub-

lic morals. All these matters of police are embraced in the act."

The contention of counsel is that the changing of the personnel of the board is not an exercise of police or reserve power, because it is not legislation concerning public safety, public health, and public morals. The fallacy in the argument is that it isolates the appointment of the members of the board from the powers, duties, responsibilities, and functions which the personnel of the board must discharge under the law. These public officials are charged with the execution of the laws regulating public health and public safety. Consequently, the statute comes under the police or reserve power of the state.

The argument is made that Act No. 36 of the 2d Extra Session of 1934 is violative of the so-called "home rule" provision of the Constitution as embraced in section 22 of article 14 of the Constitution.

It was held in the Kohnke Case, 109 La. 838, 869, 33 So. 793, 805, that Act No. 111 of 1902 was unconstitutional in so far as it increases or changes the method of selection of the membership of the sewerage and water board as created by Act No. 6 of 1899, for the reason "that the sewerage and water board is 'charged with the exercise of the police power and with the administration of the city of New Orleans in whole or in part,' is undeniable and not denied."

We have already demonstrated in this opinion that that *identical clause* was omitted from section 22 of article 14 of the Constitution of 1921, and that the state was reinvested with its "unrestricted" police power by that section.

It is also stated in the Kohnke Case: "The decisions in the cases in 41 La. Ann. 156, 6 So. 592 (Police Board Case [State v. Shakespeare]), and 49 La. Ann. 115, 21 So. 179 (Dock Board Case [Duffy v. City of New Orleans]), and 49 La. Ann. 1199, 22 So. 623 (Drainage Commission Case [State v. Flower]), *are not in point*, for the reason that *since they were rendered* the words, 'and with the administration * * * *in whole or in part*,' have been added to the article [319 of the Constitution of 1898]."

With this clause eliminated from section 22 of article 14 of the Constitution of 1921, it follows that the above-cited decisions are *in point* in the present case.

In State v. Flower et als., 49 La. Ann. 1199, 22 So. 623, 625, the Attorney General, as in the case at bar, attacked as unconstitutional Act No. 114 of 1896, an act to effect the drainage of the city of New Orleans; providing for a drainage board of nine; the mayor, the chairman of designated committees of the council, the presidents of the board of liquidation of the city debt and the Orleans levee board, and two others to be selected by the designated members.

One of the alleged grounds of unconstitutionality was the infringement by the act of the right guaranteed by article 253 of the Constitution (1879) to the citizens of New Orleans of appointing the officers to conduct the police administration of the city.

It is also charged in the instant case that Act No. 36 of the 2d Extra Session for the year 1934 "undertakes to create a new sewerage and water board."

In the Flower Case, above cited, it is said: "The intimate association of drainage *with the public health* is obvious. In our earliest legislation the drainage of this city was deemed a measure of vast importance *to the state and city.* Acts 1835, p. 168. If that was the view then, there is the added force derived from our experience that this city is the gateway through which, aided by local conditions, not the least of which is bad drainage, diseases of foreign origin may, and, medical scientists affirm, have, become epidemic here, and propagated *throughout the state.* * * *

"The right of the citizens of New Orleans to appoint the officers for the administration of the government of this city has been, with some variance of language, secured by every constitution of this state save that of 1868. * * * We are asked to construe this provision so as *to deprive the state* of any power to enact this drainage. The argument is that under the constitution every function of the city government *is confided to the officials selected by the citizens,* and reference is made to the city charter to show that drainage is one of these functions. The framers of the constitution manifested their appreciation of the right of local government which should vest *in the citizens of the city.* But the question is whether the right thus conferred on the citizens does not admit of qualifications when sought to be applied to *governmental functions exerted* within the limits of the city, but of the highest importance *and of more than local concern.* Instances will readily occur of legislation in reference to subjects of deep interest *to the state and city,* and providing *state instrumentalities* to carry into effect in this city such legislation. It has never been supposed that *the state* has parted with *all legislative control* of such subjects by the provision in the constitution giving to the citizens of New Orleans *the appointment of the officers required for the police administration of the city.* The police power given to *the state to protect the public health,* we cannot appreciate, *is to be abridged* by a constitutional provision dealing with the *ordinary functions* of the police administration of the city, and confiding such duties *to the agents selected by the citizens.* * * *

"The lesson of our past legislation is that the *legislative power* over some subjects, and the right to designate *the officials and instrumentalities* by which such legislation *is to be executed* in this city,

*is wholly unimpaired by the constitutional grant of appointive power."* (Italics ours.)

In State ex rel. Nicholls v. Shakespeare, 41 La. Ann. 156, 6 So. 592, it is said: "The corporation of the city of New Orleans was created by the state for political purposes, having *subordinate* and *local* powers of legislation. Those matters, *which are of concern to the state at large,* although exercised within defined limits,—such as the administration of justice, *the preservation of the public health,* and the regulation of public morals,—*are still under legislative control,* while the enforcement of municipal by-laws are matters for purely local legislation and control. *In its public capacity as a part of the state machinery, the corporation of the city of New Orleans owes a responsibility to the state government in the performance of acts for the public benefit,* and in the regulation of this responsibility—the manner in which these acts shall be done, *and by whom—the authority of the state is supreme."* (Italics ours.)

Hence, under the wholesome reconstruction of the alleged "home rule" provision as contained in section 22 of article 14 of the Constitution of 1921, the state was left unhampered and unrestricted in the application of that provision in its organic law contained in section 18 of article 19 of the Constitution of 1921, which stipulates that the "exercise of the police power of the State shall never be abridged."

The present act provides that the mayor of the city, the commissioner of public utilities, and the chairman of the board of health of the city of New Orleans, shall be ex officio members. But as to the mayor and the chairman of the water and drainage committee (who is now the commissioner of public utilities), they are members under section 8, as amended by Act No. 111 of 1902 (see State ex rel. Sewerage & Water Board v. Commission Council, 151 La. 938, 92 So. 392), and the chairman of the board of health was a member under the act of 1902.

▬▬▬ The contention that in recreating the sewerage and water board under Act No. 36 of the 2d Extra Session of 1934, all members appointed thereon must be electors and residents of the city of New Orleans is not sound, as it is merely the argument that the city of New Orleans, in its public capacity as part of the state's machinery, owes no responsibility to the state government in the performance of acts for the public benefit, and that the authority of the state is not supreme in the regulation of this responsibility, the manner in which these acts be done *and by whom.* It is the assertion that the legislative power over the subject of the preservation of the public health in the city of New Orleans and the state at large is a matter exclusively within the control of that

city, a local and subordinate political corporation, and that any sewerage and water board created by the state must be dominated in the exercise of the state's police power in matters of general public welfare by the residents and electors of the city of New Orleans.

Such arguments and contentions are clearly contrary to the established jurisprudence of this state.

The state is not presumed to act arbitrarily in the exercise of its police power; but, because of the repeated attempts of the city of New Orleans to limit the exercise of its police power by the state within that city, the state is fully justified in creating a sewerage, drainage, and water board whose activities may not be hampered by the appointment of residents and electors of the city of New Orleans.

██ Act No. 36 of the 2d Extra Session of 1934, revives, re-enacts, and amends section 8 of Act No. 6 of 1899, Ex. Sess., as amended by Act No. 111 of 1902, and repeals the original section 8 and also repeals section 8 as amended by Act No. 111 of 1902.

It is provided in section 17 of article 3 of the present Constitution, and also in article 32 of the Constitution of 1913, that "no law shall be revived or amended by reference to its title, but in such cases the act revived, or section as amended, shall be reenacted and published at length."

The contention is that an act that has been declared unconstitutional cannot be amended, revived, and re-enacted.

However, in the case of State v. Walters, 135 La. 1070, 66 So. 364, the latest case on the subject, it was held, on rehearing, that under the provisions of article 32 of the Constitution of this state, "the Legislature may amend a repealed statute by the same act in which the repealed law is revived and re-enacted, provided the object of the amending and re-enacting statute be expressed in its title."

It must be remembered that Mr. Justice Provosty's decision in the Kohnke Case, 109 La. 838, 33 So. 793, was only to the extent that in so far as Act No. 111 of 1902 made certain officers ex officio members of the sewerage and water board and did not provide for their election by the council, or their appointment by the mayor, the same was violative of article 319 of the Constitution of 1898, and as a consequence and to that extent only is now null and void.

Section 8 of Act No. 6 of 1899, as amended by Act No. 111 of 1902, was cited as being in force and effect by this court in State, etc., v. Commission Council, 151 La. 938, 92 So. 392, 394, where the court held: "It appears that, of the five members of the commission council, four are exofficio members of the sewerage and water board, namely, the mayor, the chairman of the finance com-

mittee, chairman of the committee on budget and assessment, and chairman of the committee on water, drainage, and sewerage. It appears, too, that the mayor, with the consent of the municipal council, appoints all other members of the sewerage and water board. See section 8 of Act 111 of 1902, p. 171, as construed in State ex rel. Saunders v. Kohnke, 109 La. 838, 33 So. 793."

It was necessary for the Legislature to revive, amend, and re-enact section 8, as amended by Act No. 111 of 1902, for the very reason that Act No. 111 of 1902 had merged the drainage commission with the sewerage and water board. This court observed in the Kohnke Case, 109 La. 838, 872, 33 So. 793, that the part of Act No. 111 of 1902, merging the drainage commission with the sewerage and water board, was unconstitutional for the reason that the object of doing so was not expressed in the title of Act No. 111 of 1902, but said that as that question did not fall within the scope of the case, it would not pass upon it. It has not been passed upon until this day. So that the drainage commission remains merged with the sewerage and water board under Act No. 111 of 1902, and certain members of the old sewerage and water board hold by virtue of this merger and abolishment of the drainage commission, and by virtue of their membership of certain committees of the commission council, as was provided in the original section 6 of Act No. 6 of 1899, Ex. Sess.

Therefore, the courts not having declared the act of the Legislature unconstitutional, the Legislature did not intend to so consider it, and revived, amended, and re-enacted section 8 as it was amended by Act No. 111 of 1902.

Act No. 36 of the Extra Session of 1934 has for its sole object to amend, revive, and re-enact section 8 of Act No. 6 of 1899, as amended by Act No. 111 of 1902, so as to reconstitute the sewerage and water board, and it has a title sufficiently indicative of the object of the act to comply with the constitutional mandate that every act shall embrace but one object and shall have a title indicative of that object.

"Within the meaning of the Constitutional provision prohibiting a statute from embracing more than one subject or one object, the subject of an act is the matter to which it relates, while the object, properly speaking, is its general purpose." 59 C. J. § 378, p. 800.

"All matters which are germane to and connected with the general subject of a statute may be included in its provisions without rendering it violative of a constitutional provision prohibiting a statute from embracing more than one subject, and a statute, no matter how comprehensive it may be, or how numerous its provisions, complies with the consti-

tutional requirements if a single main purpose is held in view and nothing is embraced in the act except what is naturally connected with and incidental to that purpose." 59 C. J. § 379, pp. 800, 801.

If the title of the original act was sufficient to create the sewerage and water board, then the title of the amending act, which quotes the title of the original act, is sufficient to recreate the sewerage and water board.

Counsel for the four first named defendants refer us to the following cases: Saunders v. Board of Liquidation, 110 La. 313, 34 So. 457; State ex rel. Sewerage & Water Board v. Michel, 127 La. 685, 53 So. 926; State v. Billhartz, 146 La. 855, 84 So. 120; New Orleans Taxpayers' Ass'n v. Sewerage Board, 132 La. 839, 61 So. 843; Realty Owners' Protective Alliance v. City of New Orleans, 165 La. 159, 115 So. 444.

These cases are not apposite, because they follow the Kohnke Case, where the facts and the provisions of law were different than in the instant case.

We differentiate the cases, Louisiana ex rel. v. Pilsbury, 105 U. S. 278, 26 L. Ed. 1090; Straus v. City of New Orleans, 166 La. 1035, 1046, 118 So. 125; Hendrickson v. Apperson, 245 U. S. 105, 38 S. Ct. 44, 62 L. Ed. 178; Dartmouth College Case, 4 Wheat. 518, 636, 4 L. Ed. 629; Coombes v. Getz, 285 U. S. 434, 52 S. Ct. 435, 76 L. Ed. 866, on the ground that we have hereinabove demonstrated and concluded that the statute in question does not impair the vested property rights and the obligations of the bondholders' contracts.

■■■ This is a summary proceeding and an emergency matter affecting vast proposed public improvements, which will afford employment to a great number of citizens, according to the plans of the Public Works Administration. Such cases are entitled to special preference under the long-established rules of this court and the statutes of this state. We have endeavored to give the case the prompt attention it required.

The style, form, and substance of the decree of the lower court having been questioned, for the purpose of clarity, we shall amend it to read as follows:

For the reasons assigned, it is ordered, adjudged, and decreed that Act No. 36 of the 2d Extra Session of the Legislature of Louisiana of 1934, amending and re-enacting section 8 of Act No. 6 of the Extra Session of the General Assembly of Louisiana of 1899, as amended by Act No. 111 of the General Assembly of Louisiana of 1902, be and the same is hereby declared valid and constitutional.

It is further ordered, adjudged, and decreed that there be judgment herein in favor of the board of commissioners of the Port of New Orleans of Louisiana, the state board of health of Louisiana,

the board of commissioners of the Orleans levee district of Louisiana, the board of control of the New Basin Canal and Shell road of Louisiana, and against the plaintiffs, the state of Louisiana, the Attorney General of the state of Louisiana, and the defendants Hon. T. Semmes Walmsley, the mayor of the city of New Orleans, Hon. Fred A. Earhart, the commissioner of public utilities of the city of New Orleans, Dr. William H. Robin, the chairman of the board of health of the city of New Orleans, the board of liquidation, city debt, of New Orleans, and Hon. Charles J. Theard, president of board of liquidation, city debt, of New Orleans, and the said board declaring Act No. 36 of the 2d Extra Session of the Legislature of Louisiana of 1934, amending and re-enacting section 8 of Act No. 6 of the Extra Session of the General Assembly of Louisiana of 1899, as amended by Act No. 111 of the General Assembly of Louisiana of 1902, valid and constitutional, and dissolving the preliminary writ of injunction, and dismissing the plaintiffs' suit.

The judgment as amended is affirmed.

O'NIELL, C. J., dissents from the ruling that Act No. 36 is constitutional, and will hand down his reasons.

ROGERS, J., concurs in the overruling of the motions to dismiss and to remand, but otherwise dissents, being of the opinion that Act No. 36 of the 2d Extra Session of 1934 is unconstitutional.

ODOM, J., dissents from the holding that Act No. 36 is constitutional.

O'NIELL, Chief Justice (dissenting).

My opinion is that Act No. 36 of the 2d Extra Session of 1934 is unconstitutional, for the following reasons:

First. The changing of 'the membership or composition of the sewerage and water board, by doing away with the seven resident taxpayers of New Orleans as members of the board and by placing on the board eight appointees of the Governor, violates one of the conditions on which the tax was levied and the bonds were issued, under the provisions of Act No. 6 of the Extra Session of 1899, which, by the constitutional amendment adopted pursuant to Act No. 4 of that session, became a part of the Constitution of 1898, and which has been expressly retained as a part of the Constitution, today, in section 23 of article 14 of the Constitution of 1921.

Second. The changing of the membership or composition of the sewerage and water board, so that some of the members—in fact a majority of the members—shall be appointees of the Governor, violates the so-called home rule clauses in section 22 of article 14 of the Constitution, which, in plain terms, declares that the electors of the city of New Orleans shall have the right to choose the municipal or local officers, and that the Legislature shall not authorize the appointment otherwise of any local board

or commission with the authority "of controlling the ordinary governmental functions of municipal government."

Third. So far as Act No. 36 of the 2d Extra Session of 1934 attempts to place on the sewerage and water board, to be selected as members ex officio, eight members of other boards, some of whom are not required by law to be residents or electors of the city of New Orleans, and some of whom are in fact required by law to be residents and electors elsewhere in the state, the Act No. 36 violates the electoral qualifications prescribed in section 1 of article 8 of the Constitution, and violates section 13 of the same article of the Constitution (1921); which declares that no person shall be eligible to any office, state, district, parochial, municipal, or ward office, who is not a duly qualified elector of the state, district, parish, municipality, or ward, wherein the functions of the office are to be performed.

Fourth. The attempt, in Act No. 36 of the 2d Extra Session of 1934, to remove the seven resident taxpayers from membership of the sewerage and water board, is violative of section 9 of Act No. 6 of the Extra Session of 1899, which has become a part of the Constitution, and which declares, as one of the conditions on which the tax was voted and the bonds were issued: "That the members of said board shall be removed from office only in the manner and for the causes enumerated in Articles 217 and 222 of the State Constitution." Articles 217 and 222 of the Constitution of 1898, and the corresponding articles of the Constitution of 1913, prescribed the causes for removal of a public officer from his office, and prescribed the mode of procedure. The same provisions, substantially, are retained in sections 1 and 6, respectively, of article 9 of the Constitution of 1921, the causes for removal being declared to be (1) high crimes and misdemeanors in office, (2) incompetency, (3) corruption, (4) favoritism, (5) extortion or oppression in office, (6) gross misconduct, and (7) habitual drunkenness. Inasmuch as these provisions of the Constitution would have been sufficient authority for the removal of any member or members of the sewerage and water board for malfeasance or misfeasance, without any mention of the fact in Act No. 6 of the Extra Session of 1899, it is obvious that the only purpose of section 9 of the statute was to emphasize that there should be no change made (especially without a constitutional amendment) in the membership or composition of the sewerage and water board, as fixed in the statute, and as embedded in the Constitution, as one of the conditions on which the tax was levied and the bonds were issued.

Fifth. Act No. 36 of the 2d Extra Session of 1934, in abolishing this condition on which the tax was voted and the bonds were issued—that there should be always seven resident taxpayers of

New Orleans as members of the sewerage and water board—impairs the obligation of the contract between the city of New Orleans and the taxpayers, and of the contract between the city of New Orleans and the bondholders, and is therefore violative of section 10 of article 1 of the Constitution of the United States, as well as of section 15 of article 4 of the Constitution of Louisiana 1921.

What the Legislature has attempted to do by Act No. 36 of the 2d Extra Session of 1934 is what the Legislature attempted to do by Act No. 111 of 1902; that is to say, to amend section 8 of Act No. 6 of the Extra Session of 1899, so that a majority of the members of the sewerage and water board would be appointees of the Governor, instead of a majority of the members of the board being resident taxpayers of the city of New Orleans, appointed by the mayor. By the act of 1902 the Legislature did not attempt to do away with the seven resident property taxpayers as members of the board, but attempted merely to add, as ex officio members of the board, three members of the board of commissioners of the Orleans levee district, the chairman of the board of health, a member of the board of commissioners of the Port of New Orleans, and the commissioner of labor and statistics. Soon after the act of 1902 was passed, and before it could go into effect, a property taxpayer in New Orleans, the late Eugene D. Saunders, a distinguished member of the bar, obtained a writ of quo warranto against the six newly-added members of the sewerage and water board, challenging their right to take office as members of the board. The case is reported as State ex rel. Saunders v. Kohnke et al., 109 La. 838, 33 So. 793. The basis—and the only basis—of Mr. Saunders' suit was that the act of 1902 was unconstitutional, for the several reasons for which the Attorney General here, on behalf of the state and on behalf of the taxpayers and bondholders of this city, contends now that Act No. 36 of the 2d Extra Session of 1934 is unconstitutional. This court rendered a very thorough and well-considered opinion in the case of State ex rel. Saunders v. Kohnke et al., holding that the act of 1902 was unconstitutional, so far as it undertook to change the membership or composition of the sewerage and water board, for the following reasons: First, that the change was violative of one of the conditions named in the taxpayers' petition to the city council to levy the tax, which petition—with the conditions named in it—became a part of Act No. 6 of the Extra Session of 1899, and which, by virtue of the constitutional amendment adopted pursuant to Act No. 4 of that year, became a part of the Constitution itself; second, that the act of 1902 was violative of the so-called home rule clauses in the Constitution, being articles 319 and 320 of the Constitution of 1898, reserving to the inhabitants of

the city of New Orleans the right to choose their local or municipal officers; and, third, that, inasmuch as one of the newly-added and ex officio members of the sewerage and water board was not required to be an elector of the city of New Orleans, the act of 1902 was violative of the articles of the Constitution prescribing the electoral qualifications for public officials, and particularly article 210 of the Constitution of 1898, declaring that no one should be eligible to a municipal office unless he was a qualified elector of the municipality in which the functions of the office were to be performed. As to this latter ground of unconstitutionality of the act of 1902, the court said, in 109 La. 838, on page 874, 33 So. 793, 807:

"In opposition to this contention it is said that the incumbent of the office for the time being happens to be an elector of the parish of Orleans, and that, therefore, the complaint is groundless. This reply is fallacious. It is not the present incumbent individually who is made a member [of the Sewerage and Water Board], but the incumbent of the office [as a member of the other board], whoever he might be; and to be an elector of the parish of Orleans is not prescribed among the qualifications of the incumbent of the office [as a member of the other board]. This ground of unconstitutionality must be sustained. Whether it involves the unconstitutionality of the entire act is a question the determination of which is not necessary to the decision of this suit."

I respectfully submit, therefore, that, so far as Act No. 36 of the 2d Extra Session of 1934 undertakes to allow the placing upon the sewerage and water board of the city of New Orleans of nonresidents of the city, appointed by the Governor, the statute is violative of the articles of the Constitution prescribing the electoral qualifications for public officials, and particularly the provisions of section 13 of article 8 of the Constitution. I do not find a sufficient answer to that proposition in the majority opinion rendered in the present case. It is said in the majority opinion here that it seems that the operation of the sewerage and water system of the city of New Orleans is not an ordinary governmental function of municipal government, because it vitally affects the health and the lives of the people throughout the state; and because the board has extended its lines beyond the city limits, so as to furnish water in two adjacent parishes, Jefferson and St. Bernard. Hence, it is said that the functions of the sewerage and water board of the city of New Orleans are "not purely local." From these statements in the majority opinion I infer that the majority of the members of the court take the position that the members of the sewerage and water board of the city of New Orleans are not local or municipal officers, but state officers, who may, by legislative enactment, and without constitu-

tional amendment, be made appointive, by the Governor, from any part of the state. Of course, if the members of the sewerage and water board of the city of New Orleans were not local or municipal officers, but state officers, the Legislature might, without violating the constitutional requirements for eligibility to public office, authorize the Governor to appoint, as some or all of the members of the sewerage and water board of the city of New Orleans, residents of the parish of Caddo, or of the parish of Cameron, or of any other parish in the state. We know very well that a Governor would never do that if he had the authority to do it, and that the Legislature would never give him the authority to do it if the Legislature could give it. But the question before the court now is whether the Legislature can, without constitutional amendment, authorize the appointment, by the Governor, as ex officio members of the sewerage and water board of the city of New Orleans, nonresidents of this city. As evidence of the importance of these safeguards in our Constitution, we had occasion very recently to observe that the Legislature, by Act No. 20 of the 1st Extra Session of 1935, changed the membership or composition of the board of commissioners of the police department of the city of New Orleans, by amending section 16 of the city charter (Act No. 159 of 1912), and by placing on the board, as ex officio members thereof, the president of the state board of health and the commissioner of the department of conservation. These two new members of the board of commissioners of the police department of the city of New Orleans constitute a quorum or majority of the members of the board; and neither of them is required by law to be a resident of the city of New Orleans in order to be eligible to the office which makes him, ex officio, a member of the board of commissioners of the police department of the city of New Orleans. In fact, as far as I remember, neither the president of the state board of health nor the commissioner of the department of conservation was ever a resident of the city of New Orleans until the present incumbents were appointed. Hereafter, the Governor will be compelled by law always to appoint a resident of the city of New Orleans to the office of president of the state board of health, and another resident of the city of New Orleans to the office of commissioner of the department of conservation, in order to avoid the anomaly of having the board of commissioners of the police department of the city of New Orleans composed partly—and perhaps mainly—of nonresidents of the city of New Orleans. That arrangement does not seem to me to be politically advantageous, either to the inhabitants of New Orleans or to the inhabitants of any other part of the state of Louisiana. I mention this illustration merely to demonstrate that it was to avoid the possibility of such an anom-

alous condition that the framers of the Constitution adopted the provisions requiring that, in order for a person to be eligible for any particular parochial or municipal office, he must be a resident of the parish or municipality in which the functions of the office are to be performed. That provision in the Constitution is violated by Act No. 36 of the 2d Extra Session of 1934, if the members of the sewerage and water board of the city of New Orleans are local or municipal officers, as distinguished from state officers. That the sewerage and water board is only a local or municipal board, whose members are only local or municipal officers, was decided point blank in the case of State ex rel. Saunders v. Kohnke et al. On that subject, the court, speaking through Justice Provosty, said:

"By the statute of its creation it [the Sewerage and Water Board] is given a name. It is given a domicile, since, from the force of circumstances, its domicile cannot be other than the city of New Orleans. * * *

"Since the writ of quo warranto does not issue to state officers, it becomes necessary to determine whether this board is an agency of the state or of the city of New Orleans. The matter, in our opinion, is free from difficulty. The board was created at the request of the city of New Orleans, or of the taxpayers of the city of New Orleans, for the purpose of administering affairs strictly local and municipal. Those of the members who are appointed receive their appointment from the mayor. The other members are mostly the officers of the city. But, apart from all this, the following excerpt from the same authoritative work [Dillon] on the law of [municipal] corporations clearly fixes the character of this board as a municipal agency, to wit:

" 'Questions have arisen under special constitutional provisions respecting the authority of the Legislature over municipal offices and officers. And here it is important to bear in mind the before-mentioned distinction between state officers —that is, officers whose duties concern the state at large, or the general public, although exercised within defined territorial limits—and municipal officers, whose functions relate exclusively to the particular municipality. The administration of justice, the preservation of the public peace, and the like, although confined to local agencies, are essentially matters of public concern; while the enforcement of municipal by-laws, the establishment of gasworks, *of waterworks, the construction of sewers,* and the like, are matters which pertain to the municipality, as distinguished from the state at large.' Dillon, Mun. Corp. § 58, citing a long list of authorities, at the head of which is the leading case of People v. Hurlbut, 24 Mich. 44, 9 Am. Rep. 103." (The italics are by me.)

Maintaining that the act of 1902 was violative of the home rule clauses of the

Constitution, Justice Provosty, for the court, in the Kohnke Case, said:

"It is contended that it is not, because these articles [of the Constitution] do not apply to boards whose powers, like those of the sewerage and water board extend beyond the limits of the parish of Orleans. The part of the act [No. 6 of the Extra Session of 1899] conferring upon the sewerage and water board powers extending beyond the limits of the parish of Orleans is contained in section 17 of the act, and reads as follows:

" 'Said board shall have authority to expropriate any property in any of the parishes adjoining the parish of Orleans that it may find convenient and necessary for the proper execution of the powers herein granted to it, and to extend its work into such parish for the benefit of the city of New Orleans, and to have jurisdiction and authority in such parish over said works therein situated.'

"It is perfectly plain that the purposes of the creation of this board pertain wholly and exclusively to the city of New Orleans; *that the board is as essentially local as the city council is, or any other functionary having charge of the affairs of the city; and that this authority to reach out into neighboring parishes is merely incidental, and for convenience.* When 'convenient and necessary for the proper execution of the powers herein granted,' is the language of the act. If

this were not so, if the powers of the board were to be exercised in part for the benefit of this outside territory, the situation would be that the city of New Orleans was being taxed for the benefit of these neighboring parishes. Nobody pretends to say that the tax is not strictly and exclusively for the benefit of the city of New Orleans. This shows that the board also is, since the board is nothing more than an agency created specially to carry out the purposes of the tax.

"To say that in speaking of the boards whose powers shall extend beyond the parish of Orleans the article [320] of the Constitution [of 1898] has reference to boards of such strictly local functions as this, is palpably to misinterpret the article. The article evidently has reference to boards created as much for the benefit of the outlying territory as of the city—such boards, for instance, as the board of commissioners of the port of New Orleans. That board has jurisdiction over the port of New Orleans, and that port embraces territory outside of the city. Drainage Commission Case, 49 La. Ann. 1199, 22 So. 623 (State v. Flower), is not in point. The question there was whether the duties with which the board is charged are of mere local concern or pertain to the state at large. *No one pretends that matters of sewerage and water are not of purely local concern. The authorities cited hereinabove showing the municipal character of the sewerage and*

*water board are in point also in the present connection.* [The italics are by me].

"If the view contended for prevailed, the guaranties of articles 319 and 320 [the Home Rule Clauses] would amount to nothing at all; since it would always be possible to extend into the neighboring parishes the powers of any board that might be created, and thereby circumvent the article."

Inasmuch as the provisions of section 13 of article 8 of the Constitution of 1921 are the same as were the provisions of article 210 of the Constitution of 1898, in declaring that no person shall be eligible to a municipal office unless he is a duly qualified elector of the municipality in which the functions of the office are to be performed, I do not see why Act No. 36 of the 2d Extra Session of 1934 is not as violative of section 13 of article 8 of the Constitution of 1921, as Act No. 111 of 1902 was violative of article 210 of the Constitution of 1898.

It is said in the majority opinion rendered in this case that Act No. 36 of the 2d Extra Session of 1934 does not violate the home rule clauses (in section 22 of article 14) of the Constitution of 1921, because these home rule clauses in the Constitution of 1921 are not in the same language in which they were expressed in articles 319 and 320 of the Constitution of 1898. It is true that the language is not the same, but the language appears to me to be plainer and more

emphatic and precise in the Constitution of 1921 than it was in the Constitution of 1898, so far as the language reserves to the electors of the city of New Orleans the right to choose the local or municipal officers, and forbids the Legislature to authorize the appointment of members of any local board or commission with any of the authority "of controlling the ordinary governmental functions of municipal government." In article 319 of the Constitution of 1898 it was said that the electors of the city of New Orleans should have the right to choose the public officers who should be charged with the exercise of the police power and with the administration of the affairs of the municipal corporation in whole or in part; and, in article 320 of the Constitution of 1898, it was said that article 319 should not be construed as prohibiting the establishment of boards or commissions whose members would be elected by the city council or appointed by the mayor with the consent of the council; and that the article should not be construed to prevent the Legislature from creating boards or commissions whose powers should extend in and beyond the parish of Orleans, or as affecting the then-existing boards of that character. It was with reference to the boards of that character that this court said in the Kohnke Case: "To say that in speaking of the boards whose powers shall extend beyond the parish of Orleans the article of the Constitution has reference to boards of such

strictly local functions as this [sewerage and water board], is palpably to misinterpret the article." The manifest intention of the framers of articles 319 and 320 of the Constitution of 1898—and of the corresponding articles in the preceding Constitutions—was to leave the Legislature free to create nonmunicipal boards or commissions that might function in the city of New Orleans as well as elsewhere throughout the state, without requiring that the members of such boards or commissions should be chosen exclusively by the electors of the city of New Orleans; and, at the same time, to forbid the Legislature to deprive the electors of the city of New Orleans of their right to choose the members of all local boards or commissions that might be created and invested with the authority "of controlling the ordinary governmental functions of municipal government." The framers of the Constitution of 1921, therefore, to make matters plain, redrafted these provisions of the Constitution of 1898 and of the Constitution of 1913; and, in section 22 of article 14 of the new Constitution, they declared again that the electors of the city of New Orleans should have the right to choose their public officers, but that this should not be construed as restricting the police power of the state, or as prohibiting the Legislature from appointing, or authorizing the appointment of, any board or commission with full authority in the city of New Orleans, other than that of controlling the ordinary governmental functions of municipal government.

I do not see how it can be doubted that the writers of these provisions in the Constitution of 1921 reserved to the electors of the city of New Orleans the right to choose the members of all local or municipal boards or commissions having the authority "of controlling the ordinary governmental functions of municipal government." That the sewerage and water board is such a local or municipal board was decided definitely in the Kohnke Case, and is the unanimous opinion of the text-writers on the subject of municipal corporations. The decision in the Kohnke Case has never been overruled, or referred to with disapproval, and in fact it has been affirmed, in practically all of its aspects, by the rulings in the following five cases: Saunders v. Board of Liquidation of City Debt, 110 La. 313, 34 So. 457; State ex rel. Sewerage & Water Board v. Michel, Secretary of State, 127 La. 685, 53 So. 926; New Orleans Taxpayers' Protective Association v. Sewerage & Water Board, 132 La. 839, 61 So. 843; State v. Billhartz, 146 La. 855, 84 So. 120; and Realty Owners' Protective Alliance v. City of New Orleans, 165 La. 159, 115 So. 444.

In the majority opinion rendered in this case it is said that, in the Kohnke Case, three earlier cases, namely, the Police Board Case (State v. Shakespeare), 41 La. Ann. 156, 6 So. 592, and the Dock

Board Case (Duffy **v.** City of New Orleans), 49 La. Ann. 115, 21 So. 179, and the Drainage Board Case (State v. Flower), 49 La. Ann. 1199, 22 So. 623, were differentiated from the Kohnke Case "only on the ground of the sweeping, broad and general delegation of the police power of the state to the city of New Orleans, under articles 319 and 320 of the Constitution of 1898." It is true that the court said in the Kohnke Case that the three decisions cited were "not in point, for the reason that since they were rendered the words, 'and with the administration of the affairs of said corporation in whole or in part,' have been added to the article." That was perhaps deemed a sufficient reason for dismissing from further consideration the three cases that were cited; but the fact is that, in the Police Board Case, the statute (Act No. 63 of 1888) creating the board did not deprive the electors of the city of New Orleans of their right to choose the members of the board; and the Dock Board Case and the Drainage Board Case were decided upon the fact that these boards were not municipal boards.

It is said in the majority opinion in this case that, by article 319 of the Constitution of 1898, the state of Louisiana was stripped of its police power and control over the sewerage and water board of the city of New Orleans, and was powerless to exercise it, even if the members of the board became ever so guilty of malfeasance or misfeasance in the discharge of their duties. A sufficient answer to that is that section 9 of Act No. 6 of the Extra Session of 1899, which was a part of the Constitution itself, declared that the members of the sewerage and water board should not be removed except in the manner stated and for the causes enumerated in the Constitution for the removal of public officers for malfeasance or misfeasance.

Reference is made, in the majority opinion, to Governor Parker's message to the Legislature, in the session of 1920, in which he expressed his determination to do all in his power for the destruction of boss rule and ringism in Louisiana and particularly in the city of New Orleans. I do not look upon this message as having much bearing upon the questions presented in this case. Gov. Parker, in his message, however, recommended *"retaining a necessary autonomy for the city,* the power in her people to change their administration at their will, to permit her to play her proper and legitimate part in the government of the State, but not to become a menace to the political welfare of its people." I interpret all of that to mean that, although it was deemed advisable to curtail the power of the so-called "ring," in state politics, the autonomy of the city of New Orleans should be preserved, for the benefit of the many inhabitants who were well-meaning people. That policy was carried out in the redrafting of the home rule clauses of the Constitution, in the

Convention of 1921. If the intention had been to withdraw from the city of New Orleans all of the so-called delegated police power, and to deprive the electors in the city of their right to choose the members of the local or municipal boards having the authority "of controlling the ordinary governmental functions of municipal government," the home rule clauses would have been deleted from the Constitution. No other city or town in Louisiana is favored with a home rule clause in the Constitution. If these home rule clauses in the Constitution of 1921 do not protect the inhabitants of the city of New Orleans against legislative interference in the matter "of controlling the ordinary governmental functions of municipal government," I ask, what benefit are these home rule clauses to the inhabitants of the city of New Orleans?

Governor Parker did not suggest to the Legislature, in 1920, or to the Constitutional Convention of 1921, that any change should be made in the provisions of Act No. 6 of the Extra Session of 1899, creating and governing the sewerage and water board of the city of New Orleans.

It is said in the majority opinion in this case:

"Section 22 of article 14 of the Constitution of 1921 does not merely reinvest the state with its inherent and plenary police power, but it goes much further and prohibits the courts of the state from *construing this section* as a lim-

itation upon the state's police power, in so far as the city of New Orleans is concerned. Thus the members of the Constitutional Convention of 1921 restored the state's sovereign power over the city of New Orleans and the sewerage and water board."

My opinion is that the state never at any time lost its "inherent and plenary police power" in the city of New Orleans, or its "sovereign power over the city of New Orleans and the sewerage and water board." The police power of the state has little or nothing to do with this case. Nobody can well dispute that the regulation and control of the sewerage and water board, or of any other of the governmental affairs of the city of New Orleans, is within the police power of the state—as it was in the beginning—is now—and ever shall be—world without end. Sicut erat in principio, et nunc, et semper, et in saecula saeculorum. But the question in this case is, first, whether the state's police power, in this particular instance, may be exercised by a mere act of the Legislature, or requires a constitutional amendment, and, second, whether this attempted exercise of the police power of the state tends to impair the obligation of a contract between the city of New Orleans and the taxpayers or bondholders.

Much is said in the majority opinion in this case about the authority of the Legislature to amend municipal charters. Of

course, the Legislature has the authority to amend any municipal charter in any respect *where there is no constitutional limitation upon such authority;* but where there is such a constitutional limitation the amendment of the municipal charter must be by way of an amendment of the Constitution itself.

It is said in the majority opinion in this case that the argument on behalf of the plaintiffs—the state and the taxpayers and the bondholders of the city of New Orleans—that the Legislature cannot abolish the condition (on which the tax was levied) that the members of the sewerage and water board shall be residents and electors of the city, is *not* sound, in that it is merely the argument that the city of New Orleans, in its public capacity as a part of the state's machinery, owes no responsibility to the state government in the performance of acts for the public benefit, and that this is merely the argument that the authority of the state is not supreme in the regulation of this responsibility, and of the manner in which these acts are to be done, *and by whom.* The question in this case, however, is not whether the authority of the state is superior to that of the city, but whether the authority of the Constitution is superior to that of the Legislature.

It is said in the majority opinion in this case that, in certain instances where the sewerage and water board has been

sued for damages resulting from negligence on the part of the agents or employees of the board in the performance of their duties, the board has pleaded that it was engaged in the performance of a *governmental* function, as distinguished from a *municipal* function. The distinction which the law makes, in that respect, as I understand it, is not between a *governmental* function and a *municipal* function. The distinction is between the two kinds of functions which a municipality performs—one kind of municipal functions being called the "governmental" functions, and the other kind of municipal functions being called the "private" or "proprietary" or "corporate" functions. That distinction has been recognized by this court, consistently, and for a long time, particularly in the following cases: Stewart v. City of New Orleans, 9 La. Ann. 461, 61 Am. Dec. 218; Lewis v. City of New Orleans, 12 La. Ann. 190; City of New Orleans v. Kerr, 50 La. Ann. 413, 417, 23 So. 384, 69 Am. St. Rep. 442; Jones v. City of New Orleans, 143 La. 1073, 79 So. 865; Joliff v. City of Shreveport, 144 La. 62, 80 So. 200.

It is plain, therefore, that, when the sewerage and water board pleads, in defense of a damage suit, that the board is engaged in a "governmental function," it means that the board is engaged in one of "the ordinary governmental functions of municipal government," as referred to in section 22 of article 14 of

the Constitution, and as distinguished from a "private" or "proprietary" or "corporate" function. The expression in the Constitution, "the ordinary governmental functions of municipal government," sounds like tautology; but the language is really well-chosen, because, as I have pointed out, there is another class of "functions of municipal government" · besides "the ordinary governmental functions of municipal government." In reserving to the electors of the city of New Orleans the right to choose the members of all local boards exercising municipal functions, the members of the Constitutional Convention of 1921 were exact in specifying "the ordinary governmental functions of municipal government." I have never heretofore heard it disputed that the maintenance and operation of a sewerage and water system is among "the ordinary governmental functions of municipal government."

It is a fact—as pointed out in the majority opinion in this case—that in the Kohnke Case the court decided only that Act No. 111 of 1906 was unconstitutional in that it undertook to make the members of certain other boards or commissions members, ex officio, of the sewerage and water board, without requiring that they should be chosen by the electors of the city of New Orleans, or elected by the municipal council or appointed by the mayor. Act No. 36 of the 2d Extra Session of 1934 undertakes

to do the same thing, but goes further and undertakes to abolish the appointing by the mayor of seven resident taxpayers in the city of New Orleans, as members of the sewerage and water board, one taxpayer from each one of the seven municipal districts.

In attempting to make this change in the membership or composition, and in the authority and method of selecting the members, of the sewerage and water board, the Legislature of 1934 has come into conflict—more than the Legislature of 1902 came into conflict—with the constitutional requirement, as a condition on which the tax was levied and the bonds were issued for the establishment of the sewerage and water system, that there should be seven resident taxpayers as members of the sewerage and water board. That the tax was levied subject to the conditions stipulated in the taxpayers' petition to the municipal council to adopt the necessary ordinance was stated in the preamble to Act No. 6 of the Extra Session of 1899, ratifying the tax levy, subject to the conditions, thus:

"Whereas, on June 6, 1899, the property taxpayers of the city of New Orleans in due form of law voted a special tax of two mills on the dollar for forty-three years, beginning with the year 1899, *upon certain conditions set forth in the property taxpayers' petition, made the basis of said election,*" etc. (I did the italicizing.)

Section 8 of Act No. 6 of the Extra Session of 1899 is a copy of section 11 of the City Ordinance No. 15391 levying the tax; and, as one of the conditions on which the tax was levied, this section of the ordinance, and of the statute, created and provided for the membership or composition of the sewerage and water board "for the purpose of constructing, controlling, maintaining and operating the public water system and public sewerage system of the city of New Orleans."

In section 35 of Act No. 6 of the Extra Session of 1899 are the most significant and important of all of the provisions on the subject which we are dealing with in this suit. In that section of the act it was declared that, as the provisions of the act were to become a part of the Constitution, the right was reserved, nevertheless, to the Legislature, to amend the act *in any respect that would not be violative of the conditions on which the special tax was voted by the property taxpayers, and that would not impair the vested rights or contract rights of the holders of the bonds issued under the provisions of the act.* Section 35 of the act is as follows:

"Sec. 35. Be it further enacted, etc. That, as it is proposed to have this act ratified by an amendment to the Constitution, it is hereby specially declared to be the intent of this act, and of said ratifying constitutional amendment, that the General Assembly reserves the right

and power to amend this act in any respect not violative of the conditions upon which the said special tax was voted by the property taxpayers of the city of New Orleans, and not impairing the vested rights or the contract rights of the holders of the bonds issued under its provisions."

This reserved right of the Legislature to amend the act, with the stipulated limitation upon the right to amend, was repeated in the constitutional amendment; that is to say, in the joint resolution (Act No. 4 of the Extra Session of 1899) proposing the amendment, which was adopted, thus:

"The special tax for public improvements, voted by the property taxpayers of the city of New Orleans on June 6, 1899, is hereby ratified, and its validity shall never be questioned. The special act [No. 6] adopted by the Legislature at the Special Session held on August 8, 1899, * * * *constituting the Sewerage and Water Board of the City of New Orleans,* authorizing the city of New Orleans to issue bonds, and providing the means to pay the principal and interest thereof, *and for other purposes cognate to the purposes of the special tax aforesaid, is hereby ratified and approved, especially including the therein reserved legislative right to amend the same; and all provisions of the present Constitution in conflict with the provisions of said act, and with this amendment, are to that extent and for that purpose only repealed.*"

The provisions of this constitutional amendment were retained, word for word, in the Constitution of 1921, as section 23 of article 14. There was added a provision relieving the city of New Orleans of the duty of providing in its annual budget for the maintenance and operation of the sewerage and water system, and requiring the sewerage and water board to adjust its rates accordingly. There was added also a provision authorizing the board to contract with parties having franchises for that purpose to supply water to consumers in the adjoining parishes, at rates to be fixed by the board. There was added also a ratification of Act No. 19 of 1906 and Act No. 116 of 1908, relating to the issuance of $8,000,000 of new public improvement bonds of the city of New Orleans.

The result of the adoption of the municipal ordinance and the statute and constitutional amendment of 1899 was that all of the conditions on which the tax was levied, and which were stipulated in the taxpayers' petition for the levying of the tax, and which were repeated in the act ratifying the tax levy, became a part of the Constitution; and included therein was the right of the Legislature to amend the law, even though it was a part of the Constitution; provided, however, that it should not be amended in any respect that would be violative of the conditions on which the tax was levied, or that would impair the contract rights of the bondholders. That status, with regard to the provisions of Act No. 6 of the Extra Session of 1899, prevails today, under the exact language of section 23 of article 14 of the Constitution of 1921.

Now, here is what this court said on the subject in the Kohnke Case:

"We hardly think it would be taking a practical or sensible view of the situation to interpret the [constitutional] amendment so as to leave the matter of the bonding vel non of the avails of the tax, and the matter of the constituting vel non of the special board to administer these avails, within the discretion of the Legislature, while the tax itself was being secured hard and fast in the framework of the Constitution. We think that the practical and sensible view to take is that the agents of the taxpayers who framed the amendment did their work with a view to conserving these conditions; in other words, that the amendment means exactly and precisely what it says, namely, that 'the tax voted' and 'the tax levied' is ratified, and shall never be questioned; that is, the tax as voted and as levied, subject to the conditions upon which it was voted and levied. * * *

"We must hold that the conditions of the taxpayers' petition referred to in the reserve were not the rate, duration, and purposes of this tax, but were 'the terms and conditions set forth in the taxpayers' petition under which the tax had

been voted,' and that one of the chief of these conditions was the one bearing upon the manner of the organization of the board which was to administer the proceeds of the tax.

"It is argued that, if this sewerage and water board has become a constitutional board, then that during the life of this board—43 years—it will not be possible to change the form of government of the city of New Orleans, because the mayor and the chairmen of the committees of budget, water and drainage, and finance are made members of said board; the proposition being that, in order to continue to be members of the board, the said officials will have to continue in their same functions, and under their same official titles.

"We do not think that the situation would be so serious as all this. If the city ceased to have an officer called by the official name of 'mayor,' it would be forced to have some other official filling approximately the same functions, and the courts would experience no difficulty whatever in holding that this official took the place of the mayor on the board; and so with the other city officials.
* * *

"It is well to note, in passing, that, while the act of 1899 is adopted into the Constitution as a whole, it is so adopted with special reservation of the right of the Legislature to amend, except in so far as might be violative of the conditions of the taxpayers' petition; and that

the effect of this reserve was to withhold from incorporation into the Constitution all the parts of the act not covered by the conditions of the taxpayers' petition. This result follows, ex necessitate, from the legislative right to amend. Since the Legislature cannot amend the Constitution, it follows that the act, in so far as amendable by the Legislature, is no part of the Constitution, and it is amendable in all respects except in violation of the conditions of the taxpayers' petition."

What was said in the Kohnke Case was repeated and affirmed in State v. Billhartz, 146 La. 855, 84 So. 120, 122, thus:

"It will be seen, therefore, that the purposes, terms, and conditions for and upon which the property tax payers of New Orleans consented that their property should be subjected to the special tax, which could not have been levied without such consent, were set forth in considerable detail, in an act of the General Assembly, which, by vote of the entire electorate of the state, was incorporated in, and made part of, the Constitution, and which (it may be stated) has so been recognized by this court. State v. Kohnke, 109 La. [838] 861, 33 So. 793; Saunders v. Board, 110 La. 313, 34 So. 457; State ex rel. Sewerage & Water Board v. Michel, 127 La. 685, 53 So. 926; New Orleans Taxpayers' Ass'n v. Sewerage Board, 132 La. 839, 61 So. 843."

It is said in the majority opinion in this case that the provisions of Act No. 6 of the Extra Session of 1899 were, in part, directly contrary to the petition of the taxpayers, and in part beyond the scope of the taxpayers' petition. This court found, however, in the Kohnke Case that the slight departures from the terms of the taxpayers' petition, in the statute which made it a part of the Constitution, were unimportant, and were in fact only interpretations of the petition. Here is what the court said on the subject:

"The Legislature had faithfully accomplished that purpose, adhering strictly to the plan or scheme, *except in a harmless particular, to which nobody objected.* The drafting of the act and of the joint resolution proposing the amendment was the handiwork of the taxpayers themselves through their chosen agents, of which fact this court may take judicial notice as of a part of the public history of the state. There was no reason why the tax voted should not be adopted into the Constitution as voted; that is, with the conditions attached to it which the taxpayers had coupled with it in voting it. * * *

"It is said, also, that the suggestion of the petition with regard to the organization of the sewerage and water board was never carried out, the ordinance adopted for the purpose of carrying out the petition having provided for a differently constituted board, and the board so provided for not having ever organized, but having been entirely supplanted by the legislative board created by the act of 1899; and that the latter board was and remained subject to the legislative control, it being purely a legislatively created board.

"We find no force in this argument. The section 8 of the act of 1899 providing for the sewerage and water board was a verbatim copy of the section 11 of the council ordinance adopted to carry out the petition; and this ordinance, very far from seeking to violate the conditions of the petition, sought, on the contrary, to carry them out faithfully and carefully. In the petition the eventuality of the reduction of the membership of the drainage commission or of the total abolition of the commission had not been foreseen and provided for; and it became necessary to remedy this in the ordinance carrying out the petition, and provision covering this eventuality was accordingly made. *But this was a mere interpretation of the petition, and strictly in line with it. Nobody looked upon the matter in the light of a change in the conditions of the petition, and that idea is now suggested for the first time. Under these circumstances, the condition of the petition with respect to this board must be held to have been what both by the ordinance and by the act of the Legislature it was thus interpreted to have been, and it must be held to have been carried*

into the Constitution as thus interpreted." (Italics are mine.)

It is said in the majority opinion in this case:

"The State Constitution (Act No. 4 of 1899, Ex. Sess., article 313 of the Constitution of 1913, and section 23 of article 14 of [the Constitution of] 1921) provides that *'the validity of the special tax shall never be questioned.'*"

Hence it is said in the majority opinion in this case:

"The bondholders need never worry about the refusal of the taxpayer to pay the tax, or about any suit to prevent its levy and collection, *since the validity of the tax may never be questioned.*"

I have copied already the constitutional amendment ratifying the tax, which ratification is repeated in section 23 of article 14 of the Constitution of 1921, showing that the tax was ratified, as voted and as levied, and subject to the conditions stated in the statute, "including the therein reserved right to amend the same," with the limitations upon the legislative right to amend the same. And here is what this court said on the subject in the Kohnke Case, viz.:

"We think that the practical and sensible view to take is that the agents of the taxpayers who framed the [constitutional] amendment did their work with a view to conserving these conditions; in other words, that the amendment means exactly and precisely what it says, namely, *that 'the tax voted' and 'the tax levied' is ratified, and shall never be questioned; that is, the tax as voted and as levied, subject to the conditions upon which it was voted and levied.*" (The italics are mine.)

That means—as plainly as words can convey a meaning—that the ratification of the tax was given *subject to the conditions on which the tax was voted and levied.* And the condition which the court had especially in mind, in making that important declaration in the Kohnke Case, was that the composition or membership of the sewerage and water board, as fixed in the taxpayers' petition and in the ordinance and in the statute, should not be changed. The corollary of the declaration which I have just quoted from the Kohnke Case is that the validity of the tax may be questioned by the taxpayers if the conditions on which it was voted and levied are not adhered to. And, for that reason, the bondholders, as well as the taxpayers, have the right to complain now of the act of the Legislature which undertakes to impair the obligation of the contract with the city of New Orleans.

In fact, the decision rendered by this court in the Kohnke Case became a part of the obligation of the contract on the part of the city of New Orleans in favor of the bondholders. The evidence in this case discloses that $9,000,000 of the $12,000,000 of bonds were sold after the decision was rendered in the Kohnke

Case, and were sold, presumably, on the representations made by the decision in the Kohnke Case. It is in evidence in this case that the New Orleans banks that held the $12,000,000 of bonds sent out circulars, as an inducement to the prospective bond buyers to buy the bonds, saying that all of the conditions on which the tax was voted and levied to pay the bonds were protected against legislative interference. Here is a copy of the pertinent part of the circular:

"Every condition surrounding these bonds, which are issued under authority of a constitutional amendment, is protected from legislative interference in any particular whatsoever, as announced by a decision of the Supreme Court of Louisiana, in the case of State ex rel. Saunders v. Kohnke, 109 La. 838 [33 So. 793]."

The doctrine that the construction which the highest court of a state gives to a statute of the state becomes a part of the statute itself is so well settled that perhaps I should refrain from further lengthening this dissenting opinion by quoting the decisions which have been cited on behalf of the taxpayers and bondholders. The most pertinent of these decisions is the one which was rendered in the case of State of Louisiana ex rel. Southern Bank v. Edward Pilsbury, Mayor of New Orleans, et al., 105 U. S. 278, 294, 26 L. Ed. 1090, from which I take this excerpt, viz.:

"From the extended reference to the adjudications of the Supreme Court of Louisiana, upon the Constitution of 1845, requiring uniformity and equality in taxation, there can be no serious question as to the validity of the act of 1852, so far as the consolidated bonds of the city of New Orleans are concerned, and the provisions made by it and the supplementary act for the annual levy of a tax of $650,000 to pay the interest and reduce the principal. The decisions upon the clause in the Constitution of 1852 are corroborated by the correctness of the construction originally placed upon the clause of the Constitution of 1845. *Whether such a construction was a sound one is not an open question in considering the validity of the bonds. The exposition given by the highest tribunal of the State must be taken as correct so far as contracts made under the act are concerned. Their validity and obligation cannot be impaired by any subsequent decision altering the construction. This doctrine applies as well to the construction of a provision of the organic law, as to the construction of a statute. The construction, so far as contract obligations incurred under it are concerned, constitutes a part of the law as much as if embodied in it.* So far does this doctrine extend, that when a statute of two States, expressed in the same terms, is construed differently by the highest courts, they are treated by us as different laws, each embodying the particular construction of its

own State, and enforced in accordance with it in all cases arising under it. Christy v. Pridgeon, 4 Wall. [71 U. S.] 196 [18 L. Ed. 322], and Shelby v. Guy, 11 Wheat. 361 [367] [6 L. Ed. 495]. The statute as thus expounded determines the validity of all contracts under it. A subsequent change in its interpretation can affect only subsequent contracts. The doctrine on this subject is aptly and forcibly stated by the Chief Justice in the recent case of Douglass v. Pike Co., 101 U. S. 677 [686], 687 [25 L. Ed. 968]. 'The true rule,' he observes, 'is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative amendment; that is to say, make it prospective, not retroactive. After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is, to all intents and purposes, the same in its effect on contracts as an amendment of the law by means of a legislative enactment.'" (I supplied the italics.)

Applying that doctrine to this case, the decision rendered by this court in the case of State ex rel. Saunders v. Kohnke, in January, 1903, became as much a part of Act No. 6 of the Extra Session of 1899, and particularly of sections 8 and 35, as the text itself. According to the rule announced by the Supreme Court of the United States, the decision which is now rendered in the present case, in respect to Act No. 6 of the Extra Session of 1899 and its interpretation in the Kohnke Case, is to be given the same effect in its operation on contracts and existing contract rights that would be given to a legislative amendment; that is to say, make it prospective, not retroactive.

We had occasion to apply the rule in Straus v. City of New Orleans, 166 La. 1035, 1046, 118 So. 125, 129, in July, 1928, thus:

"That decision [referring to a decision which had been rendered by this court] established a rule of property, over 18 years ago; and it is only fair to assume that investors who have bought or taken mortgages upon manufacturing or industrial establishments in this state, including the bondholders represented by the trustee in this case, acted upon the faith of the construction which this court put upon the Act 30 and the Act 187 of 1904, in the decision quoted. If we doubted the correctness of that construction now, we would not change it, so as to impair the obligations of contracts presumed to have been made on the faith of it. Southern Grocer Co. v. Adams, 112 La. 60, 36 So. 226; Maxwell-Yerger Co. v. Rogan, 125 La. 1, 51 So. 48. The Supreme Court of the United States treats the construction which the highest court of a state has given to a statute of the state as a part of the statute itself; and

if different constructions are given to the same statute at different times, it will not follow the latest decision if thereby contract rights which have arisen under the earlier ruling would be injuriously affected. Douglass v. Pike County, 101 U. S. (11 Otto) 677, 25 L. Ed. 968."

It will not do to say that the composition or membership of the sewerage and water board of the city of New Orleans, especially with regard to the statutory and constitutional requirement of having seven resident taxpayers as members of the board, is a matter of no importance or concern to the taxpayers generally, or to the holders of the bonds, of the city of New Orleans. The composition or membership of the board was the only subject-matter of the litigation in the Kohnke Case; and it was decided there that the composition or membership "of the board which was to administer the proceeds of the tax" was one of the essential and vital conditions on which the tax was voted by the taxpayers and levied by the city. The court said:

"We must hold that the conditions of the taxpayers' petition referred to in the reserve were not the rate, duration, and purposes of this tax, but were 'the terms and conditions set forth in the taxpayers' petition under which the tax had been voted,' *and that one of the chief of these conditions was the one bearing upon the manner of the organization of the board which was to administer the proceeds of the tax.*" (Italics are mine.)

My opinion, therefore, is that Act No. 36 of the 2d Extra Session of 1934 violates not only the several provisions which I have referred to of the Constitution of Louisiana, but also the declaration in section 10 of article 1 of the Constitution of the United States, that no state shall pass any law impairing the obligation of contracts.

PER CURIAM.

Generally, decisions of this court involving an interpretation of the "home rule" clauses in the various Constitutions of this state have varied in strict conformity with either the omission, enlargement, or restriction of these clauses.

In the case of R. E. Diamond v. G. L. Cain, 21 La. Ann. 309, the court said, in upholding the right of the Governor to appoint, remove, and control officers and men of the police force of the city of New Orleans, as follows:

"The Constitution of 1868 omitted article 133 of that of 1864, but by article 149 continued in force all legislation not inconsistent with the Constitution itself. This left the whole subject of the city corporation and police under the power and discretion of the Legislature, which by Act No. 1, approved July 9, 1868, created a Board of Police Commissioners, to be appointed by the Governor, and who shall have 'full power to appoint and remove and control the officers and men of the police force of the city of New Orleans;' directed how the officers and

men should be removed, and repealed all acts and parts of acts inconsistent therewith. This act took effect from and after its passage, and as a consequence, the laws *authorizing the mayor to appoint the police,* and creating a police commission, with the Mayor as a member, for the trial and removal of policemen, being inconsistent therewith, were repealed and all control of the police was taken from the Mayor and the said commission and vested in the board of five police commissioners, created by said act. No law exists authorizing the Mayor to make such appointment." R. E. Diamond **v.** G. L. Cain, 21 La. Ann. 309, 319.

In State v. Kohnke, 109 La. 838, 33 So. 793, Mr. Justice Provosty made the following comments in differentiating certain cases which held contrary to the decision in the Kohnke Case, but which were decided under the "home rule" clauses of the Constitution of 1879:

"The decisions in the cases in 41 La. Ann. 156, 6 So. 592 (Police Board Case [State v. Shakespeare]), and 49 La. Ann. 115, 21 So. 179 (Dock Board Case [Duffy v. City of New Orleans]) and 49 La. Ann. 1199, 22 So. 623 (the Drainage Commission Case [State v. Flower]), are not in point, for the reason that since they were rendered the words ['charged with the exercise of the police power'], 'and with the administration of the affairs of said corporation in whole or in part,' have been added to the article. To say

that to administer the sewerage· and the waterworks of a city is not to administer its 'affairs in whole or in part' would be to go squarely against a plain proposition." 109 La. 838, 871, 33 So. 793, 806. (Quotation between brackets ours.)

In this same case, Mr. Justice Provosty thoroughly discussed articles 319 and 320 of the Constitution of 1898 as follows (109 La. 838, 868, 33 So. 793, 804):

"Another ground of unconstitutionality relied upon is that by articles 319 and 320 of the Constitution the officers *charged with the exercise of the police power* and with the administration of the affairs of the municipalities of the state must be chosen by election, and the members of boards or commissions must either be elected by the city councils or appointed by the mayors of such municipalities; and that said act of 1902 undertakes to make the commissioner of labor and statistics, three members of the board of commissioners of the Orleans Levee District, and one member of the board of commissioners of the port of New Orleans, all of whom are appointed by the Governor, members ex officio of the sewerage and water board.

"These articles of the Constitution read as follows: 'Art. 319. The electors of the city of New Orleans, and of any political corporation which may be established within the territory now, or which may hereafter be, embraced within the corporate limits of said city, shall have

the right to choose the public officers, *who shall be charged* with the exercise of the police power and with the administration of the affairs of said corporations in whole or in part. * * *

"That the sewerage and water board is *charged with the exercise of the police power and with the administration of the city of New Orleans in whole or in part,*' is undeniable, and not denied. It would seem, therefore, that the act is in direct contravention of these articles of the Constitution."

The ruling of the court in connection with these cases is that, since their rendition, the Constitution of 1898 has been adopted which contained an enlargement of the "home rule clause" to such an extent that the city of New Orleans became charged with the entire exercise of the police power in connection with the operation of its affairs, including the affairs of the sewerage and water board.

The present case comes before this court under the Constitution of 1921 under which the "home rule clause" was deliberately curtailed, and the enlargement of this clause contained in the Constitution of 1898 was completely obliterated, and consequently the decision follows the Police Board Case, the Dock Board Case, and the Drainage Commission Case mentioned above.

The following cases in the jurisprudence of Louisiana deal with certain phases of the decision in State v. Kohnke, 109 La.

838, 33 So. 793, but none of these cases deal with the question of membership of the sewerage and water board. A résumé of these cases follows:

Saunders v. Board of Liquidation of City Debt, 110 La. 313, 34 So. 457. Judgment holds constitutional amendment relative to ratifying special tax levied in city of New Orleans as set out in Act No. 4 of 1899, Ex. Sess., was passed and adopted in full conformity with the Louisiana Constitution, and that *said amendment* was declared a part and parcel of the Louisiana Constitution.

State ex rel. Sewerage & Water Board v. Michel, Secretary of State, 127 La. 685, 53 So. 926, 928:

"For the reasons stated, our conclusion is that such notice was not required [art. 50, Const., requiring thirty days' notice prior to introduction of bill in General Assembly]. It is therefore ordered, adjudged, and decreed that the judgment appealed from, whereby the mandamus prayed for was made peremptory, be now affirmed." (Quotation between brackets ours.)

New Orleans Taxpayers' Ass'n v. Sewerage & Water Board, 132 La. 839, 61 So. 843 (syllabus by the court):

"The property taxpayers of New Orleans petitioned for the levy of a special tax, to be devoted, among other purposes, 'to the construction * * * of a free sewerage system, with free water therefor.' Act No. 270 of 1908 authorizes the

Sewerage & Water Board to fix the rate, to consumers, for such water as they may use 'for drinking and domestic purposes, exclusive of sewerage,' and the board has adopted rules fixing such rate, making a liberal allowance for water required for sewerage purposes. Hence neither the act nor the rules operate to impair the obligations of the contract between the city and the taxpayers; for the petition of the taxpayers stipulates, in effect, that only such water as may be required and used for the purposes of the sewerage system shall be free, and water required and used for other purposes, such as drinking, cooking, bathing, laundering, sprinkling, etc., and which goes into the free sewers only after those purposes have been served, does not fall within that stipulation. * * *

"It appears to be conceded that the Sewerage & Water Board has not present intention of disturbing the cisterns, and plaintiffs' complaint on that subject has not been adverted to in the argument. The trial court did not err in rejecting plaintiffs' demands, and the judgment appealed from is affirmed, at plaintiffs' cost."

State v. Billhartz, 146 La. 855, 84 So. 120:

"The purposes, terms, and conditions for and upon which the property tax payers of New Orleans consented that their property should be subjected to a special tax, to be funded into bonds the proceeds of which were to be expended in the acquisition, by construction or otherwise, of water, sewerage, and drainage systems, were set forth in detail in Act No. 6 of 1899 (extra session) which, by vote of the entire electorate of the state, was incorporated in and made part of the Constitution, after which it is clear that ordinarily no change could have been made therein by mere legislative enactment. Section 35 of the act, however, declares:

"'That, as it is proposed to have this act ratified by the Constitution, it is hereby specially declared to be the intent of this act, and of said ratifying constitutional amendment, that the General Assembly reserves the right to *amend this act* in any respect not violative of the conditions upon which said special tax was voted by the property tax payers of the city of New Orleans, and not impairing the vested rights, or the contract rights, of the holders of the bonds issued under its provisions.'

"Act 270 of 1908 purporting to impose upon the property tax payers other conditions than those imposed by the act of 1899, and not purporting to amend that act:

"Held, said act of 1908 is incompetent legislation, because, having been enacted as an independent statute, and not as an amendment to the act of 1899, it was unauthorized by section 35 thereof, and, if given effect, would be violative of the condition, plainly implied, that the obliga-

tions of the property tax payers, under the contract evidenced by that act, are not subject to change by independent and miscellaneous legislation, but, to the extent thereby authorized, only by means of a direct amendment of the act and contract whereby they were imposed and assumed."

The dissenting opinion (84 So. 120, 124) rendered by Mr. Justice Provosty in the above-cited case is interesting by reason of the fact that he was the organ of the court in the case of State v. Kohnke, upon which so much reliance was placed by certain defendants herein.

Provosty, J. (dissenting): "I cannot agree with the decision, because, as I conceive, said act does not purport to be an amendment of the Constitution, but is simply independent legislation conferring additional powers upon the Sewerage and Water Board. I know of nothing in the Constitution to prevent the Legislature from conferring upon a board created by the Constitution additional powers, and said Act 270 does nothing more than this. If the Legislature could have validly conferred these powers upon a new board created by itself for the purpose of exercising them, I do not see why it should not be able to confer them upon some board created by the Constitution, to which these powers would be appropriate and useful, in line with its constitutional functions.

"The act creating the Sewerage and Water Board and conferring certain powers upon it is in a sense amended, since additional powers are conferred; but it is not amended by making any changes in it. It remains perfectly and absolutely intact, just as the Constitution adopted it; and article 32 of the Constitution, requiring amended acts to be reenacted in full, has application only when some change is being made in the 'amended' act. See, to that effect, 36 Cyc. 1061, citing Arnoult v. N. O., 11 La. Ann. 54; State v. Henderson, 32 La. Ann. 779; Kathman v. N. O., 11 La. Ann. 145; Moore v. N. O., 32 La. Ann. 726; Murphy v. Police Jury St. Mary Parish, 118 La. 401, 42 So. 979.

"I fail to see that any of the contractual features of the Sewerage and Water Board Act are affected in any way by said Act 270; and, if any were, the legal situation would be the same, since a state cannot contract away its police power in whole or in part, no more than a man can contract away his right of self-defense. Said act professes to have been enacted as a measure of protection against yellow fever and malaria infection by mosquitoes. The majority opinion does not profess to deny that the act is a wise and effective measure in that direction, nor that it has been enacted in the exercise of the police power, nor that the protection of the inhabitants of the city of New Orleans

against yellow fever and malaria infection falls clearly within the scope of the police power; and yet it holds said act to be unconstitutional.

"The right of the judiciary to annul an act of the legislative branch of the government is contested by many; but all recognize that it should not be exercised, except sparingly, and when the doing so is unavoidable.

"I therefore respectfully dissent."

By this dissenting opinion, Mr. Justice Provosty unquestionably disagrees with the majority of the court in their interpretation of the case of State v. Kohnke which he wrote. It is notable that Mr. Justice Provosty rendered this dissenting opinion prior to the adoption of the Constitution of 1921 and under the Constitution of 1898 containing the identical "home rule" clauses which governed his decision in the Kohnke Case.

The question of whether or not a change in the membership of the sewerage and water board as prescribed by Act No. 36 of the 2d Extraordinary Session of 1934, amending and re-enacting section 8 of Act No. 6 of the Extra Session of the Legislature of 1899, as amended by Act No. 111 of 1902, would give rise to an impairment of contract has already been answered by the Supreme Court of the United States in the case of City of New Orleans v. H. W. Benjamin et al., 153 U. S. 411, 14 S. Ct. 905, 908, 38 L. Ed. 764. One of the questions cer-

tified by the Circuit Court of Appeal to the United States Supreme Court in that case was as follows:

"Second. The warrants and the certificates held by the complainant having been issued for services rendered and supplies furnished under contract with the board of Metropolitan police, when the laws required said warrants and certificates to be received by the defendants in payment of all licenses, taxes, and other dues, and all such laws having been repealed by the legislature of Louisiana without making other provision for the redemption of said warrants and certificates, was this an impairment of the obligation of the contract in relation to such warrants and certificates, within the meaning of article 1, § 10, of the constitution of the United States?"

The answer of the Supreme Court of the United States to this question was as follows (153 U. S. 411, 14 S. Ct. 905, 912, 38 L. Ed. 764):

"This conclusion covers the second question, which specifically inquires whether there was an impairment of the obligations of the contract arising upon the warrants and certificates, by reason of the repeal of laws making them receivable in payment of licenses, taxes, and other debts. Of course, there was no such impairment by the act of 1877, if that act left in force substantially the mode of payment of warrants provided by existing laws, and the bill did not at-

tack act No. 33 of 1874, which suspended the tender of warrants and certificates for taxes except for the years prior to January 1, 1874, while under the ordinance of 1879, by Act No. 49 of 1880, the police warrants or scrip for 1874, 1875, and 1876 were made receivable for police taxes without discrimination as to the year in which the warrants were issued, or the taxes levied."

It will be noted from this case that the court held that regardless of the fact that the metropolitan police board has been legislated out of existence and the Legislature had made no provision for a successor to perform the duties and obligations of this board to holders of its warrants that this did not constitute an impairment of contract because the city of New Orleans would undoubtedly perform through one of its departments the functions heretofore performed by the metropolitan police board and that the act "left in force substantially the mode of payment of warrants provided by existing laws." In the present case, a change in the membership in the sewerage and water board does not only leave in force "substantially" the mode of payment of both interest and principal on outstanding bonds but does not disturb this method one iota.

For the reasons assigned, the rehearing applied for is refused.

O'NIELL, C. J., adheres to his dissenting opinion.

ODOM, J., dissents from the refusal to grant a rehearing.

ROGERS, J., dissents from the refusal to grant a rehearing.