JANVIER, Judge.
This suit for damages results from a most nauseating occurrence. The toilet and other plumbing appliances of plaintiffs, as a result of an attempt by employees of the Sewerage & Water Board of New Orleans to unblock a sewer line, spewed back into the residence of plaintiffs toilet filth and other waste matter usually removed through the said line.
The plaintiffs, Mr. and Mrs. Metoyer, brought this suit against the Sewerage & Water Board, alleging that the happening was caused by negligence of employees of the Board. Mr. Metoyer prayed for judgment for $251.90, alleging that to be the cost of removing the filth and cleaning rugs and other household furnishings, together with $150 to compensate him for “inconvenience and mental anguish.” Mrs. Metoyer prayed for judgment for $500 to compensate her for “pain, suffering, shock, nausea, mental anguish.”
The defendant board admitted that there had been such an occurrence and “that there was a quantity of water that found its way into the various parts of the home of plaintiffs, * * *.” The Board, however, denied that this occurrence had resulted from fault on the part of its employees and alleged that, in attempting to unstop the clogged line, its employees “used the usual standard methods for unchoking said sewer main, viz.: By flushing the main with water; that this procedure has been used for many years by the Sewerage & Water Board without damage; * * *.”
The Board filed neither an exception of no right of action nor of no cause of action and did not allege that, as a governmental body performing governmental as distinguished from proprietary functions, it was immune to suit for damages caused by the tortious acts of its employees.
The matter was tried on the merits, and there was judgment for Mr. Metoyer in the sum of $181.90, $100 of which was to compensate him for his inconvenience and mental anguish and the balance of which represented the cost of cleaning the premises and household furnishings and depreciation in value of some of those articles. There was judgment in favor of Mrs. Metoyer in the sum of $500.
In his reasons for judgment the Judge a quo stated that:
“The Court is of the further opinion that no one would take a thousand dollars ($1,000.00) to go through the experience suffered by Mrs. Gladys Metoyer on the day of the 'kick-back’, * * * and, accordingly, feels that the claim of five hundred dollars ($500.00) is a reasonable claim for the pain, suffering and shock and nausea and mental anguish sustained by her * * # »
The defendant Board appealed suspen-sively.
When the matter was being argued before us there arose the suggestion that possibly the Board, because of the nature of the work which it performs in connection with removal and disposal of sewage, is immune to suit for damages for tort and that, although there had been no exception nor other plea raising this issue, possibly the Court itself should recognize that immunity and dismiss the suit.
We took the entire matter under advisement, and counsel agreed that they would file briefs in which they would discuss the question of whether the said Board, in performing such work, acts as a governmental agency engaged in performing a governmental function, and also the further question of whether, if the Board is entitled to such immunity when pleaded, an appellate court must notice the status of the Board and recognize the immunity even in the absence of such a plea. Shortly thereafter counsel for the Board filed in this Court exceptions of no cause of action and no right of action and a brief in support of those exceptions. In this brief it is argued that, not only is the Board immune to suits of this character, but that such an exception or plea, if filed in an *794 appellate court even after submission of the case on the merits, must be considered by the appellate court. And counsel for appellees (plaintiffs) have filed a brief in opposition to the exceptions and have contended that, since no such plea of exception was filed in the nisi prius court, that question may not be considered here.
If the Board, in any event, is not entitled to the immunity claimed, there would be no point in our examining into the question of whether that issue is properly raised by such exceptions as were filed here and whether, if such exceptions do raise that issue, they may be considered by us in view of their not having been filed in the trial court.
That there is such immunity in the said Board has been held on many occasions by the Courts of this State. The Supreme Court in an exhaustive opinion, in State ex rel. Porterie v. Walmsley, 183 La. 139, 162 So. 826, 843, said:
“ * * * The operation of this board is the performance of a governmental function delegated to it by the sovereign state. * * * ”
We ourselves discussed the question in Beck v. Boh Bros. Const. Co., La.App., 72 So.2d 765, 767. There, in a suit against various defendants, including the Sewerage & Water Board of New Orleans, the Board filed exceptions of no cause of action and no right of action, based on the assertion that the Board, as a governmental agency, is immune to suits based on allegations of tort. The District Judge dismissed the suit insofar as it was directed against the Board, and, when the matter came before us, we said:
“There can be no question, we think, that the operations of the Sewerage & Water Board in the construction and maintenance of drainage canals are purely governmental and not in any sense proprietary.
“This was so held in State ex rel. Porterie v. Walmsley, 183 La. 139, 162 So. 826, 843, as follows:
“ ‘ * * * the operation of the sewerage and water board controlling the drainage, sewerage, and water supply of New Orleans is not an ordinary governmental function of the municipal government * * *. The operation of this board is the performance of a governmental function delegated to it by the sovereign state.’ ”
See, also, Martin v. City of New Orleans, La.App., 98 So.2d 559.
This question of whether the said Board, in its operations in connection with the removal and disposal of sewage, is acting in a governmental capacity is not seriously disputed. But it is vehemently contended that even though such immunity may be recognized when properly pleaded, it may not be availed of here since there was, in the lower court, no plea raising that issue.
In the first place, we express doubt on the question of whether the issue of governmental immunity is properly raised by either of the exceptions filed here.
There is an almost universal misunderstanding of the functions of the two exceptions, — no right of action and no cause of action, — and there is obviously a rather general belief that the two are actually only one exception and should be pleaded together, and when so pleaded, actually put at issue all questions involving the right of the plaintiff to recover, whether the defendant may be sued, whether a cause of action exists, and all other questions upon which may depend the dismissal of the suit. For a thorough discussion of the function of these two exceptions, reference may be had to an article, “Parties Litigant in Louisiana,” 11 T.L.R. 527. In that Article Mr. Henry George McMahon, Professor of Law of Louisiana State University, analyzes the various exceptions which are found in our pleadings in Louisiana practice.
An exception of no right of action is based on the contention that the plaintiff is without interest in the matter *795 and that, even if a cause of action exists, the right to sue is not in the plaintiff who is without interest. Mr. McMahon says that “No right of action” is the more modern term applied to the antiquated exception “tua non interest” which seems to mean “lack of interest to sue.” This exception is peremptory, may be filed at any time, and, if well founded, results in the dismissal of the suit. Stevens v. Johnson, 230 La. 101, 87 So.2d 743 (on application for rehearing).
The exception of no cause of action raises only the question of whether, under the allegations of the petition, if true, there are facts which justify recovery; is there a “cause” on which the suit may be based?
It appears to us that neither of these exceptions raises the issue which is sought to be presented here, for here unquestionably the plaintiffs have an interest in recovering from a party at fault for damage sustained by them. And unquestionably, if the damage was caused by negligence of the employees of the defendant Board, a cause of action exists. The question sought to be raised is not whether there is a cause of action stated against the defendant. The question is whether, by the plea of immunity, there may be erected between the plaintiffs and the defendant an insurmountable barrier which prevents their holding the defendant liable even though plaintiffs may have a right to sue and there may be fault in the defendant.
However, this Court in Chopin v. City of New Orleans, 8 La.App. 152, in a situation identical with that under consideration here, discussed the effect of an exception of no cause of action and no right of action and did not question the propriety of permitting such a joint exception to raise this identical issue. We intimated that such a joint exception might have been considered had it been presented in time. We held, however, that since it was not presented in time, it could not be considered by this Court. The issue which was decided in that case,—whether the plea came too late, —cannot be distinguished from the issue presented here. There the plaintiff sued the City of New Orleans on an allegation of fault on the part of the driver of a garbage cart. There was no exception of no cause of action nor of no right of action, and there was no special plea of governmental immunity. There was judgment against the city and the matter came before us on appeal. During the argument on appeal and in brief
“the contention was for the first time made that in collecting garbage the defendant City is discharging a governmental function, and, consequently, is not liable for personal injuries caused by its servants. After submission of the case and while under advisement in this Court, defendant filed an exception of no cause of action.”
It should be especially noted that there, as here, the exception of “no cause of action and no right of action” was filed in the appellate court after the case had been submitted. This is shown by the following statement which appears in that opinion:
“The special defense made for the first time in this court, exemption upon the ground of governmental agency, is not referred to in the pleadings and was not argued below, obviously it was not considered by the trial court. * * * >>
We refused to consider the question of governmental immunity, saying:
“If this defense had been made in the lower court, plaintiff may have been able to show by the administration of evidence that this doctrine invoked did not apply for reasons peculiar to the present defendant. * * * ”
Application for a writ of certiorari was made to the Supreme Court and the writ was refused.
Assuming then that an exception of no cause of action or an exception of *796 no right of action properly raises the question of governmental immunity, the refusal of the Supreme Court in that case to grant a writ of certiorari convinces us that that Court was of the opinion that the plea came too late and established the principle that, in such a situation as now confronts us, the claim of governmental immunity cannot be considered if made for the first time in the appellate court, particularly after the matter has been submitted in that Court. In fact, the Supreme Court itself, in a case which went directly to it on appeal, considered a question very closely akin to that before us, and in Aleman v. Sewerage and Water Board, 196 La. 428, 199 So. 380, 382, said that since the attorney for the Board had not raised the issue in the nisi prius court, it would not consider it. It is true that there no formal plea or exception was ever filed, the question being raised only in the brief of appellant in the Supreme Court. The Court said:
“The Sewerage and Water Board, in its brief, suggests that it is an instrumentality of the State, exercising governmental functions in respect to sewage and drainage and that, therefore, it is not liable for the tortious acts of its agents in discharging those functions. But it does not appear from the record that that defense was raised and passed upon by the district court.”
Then the Court added:
“On the pleadings and the evidence, the case comes before us as an ordinary action for damages alleged to be due plaintiffs for repairs to their building, which they averred had been injured by the negligent use of a pile driver, concrete mixer, and other machinery in the construction of a culvert in a canal in front of their property.”
It is true that in that case the Supreme Court held that the Board was not liable, but it did not do so because of governmental immunity, but based its decision on the fact that plaintiffs “did not sustain their charge of negligence by a preponderance of the evidence. * * * ”
In still another case, Shalley v. New Orleans Public Service, Inc., 159 La. 519, 105 So. 606, 607, the Supreme Court held the Sewerage & Water Board liable, and refused to consider a contention similar to the question involved here. There the said Board, in the District Court, did not raise the issue of governmental immunity nor the question of whether, since it was merely an agency of a municipality, liability, if any, would be in the municipality and not in the Board. This Court held the Board liable and application for a writ of certio-rari was made to the Supreme Court, and', in that application the appellant raised the-contention that it was an administrative agency of the City of New Orleans and could not itself be held liable for tort. The Court said that this “question was raised for the first time in the application to this-Court for review,” and then added:
“In the application to this court it is stated that the exception of no cause of action is based on the fact that the sewerage and water board is the mere-administrative agent of the city of New Orleans, and is not liable in torts; that any liability resulting from torts is imposed on the city of New Orleans and not on the sewerage and water board.”
The Court refused to consider the question, saying:
“The writ of review in the present case, therefore, does not bring up for our determination the question as to' whether the sewerage and water board is liable in tort independent of the city of New Orleans.”
In view of these decisions and particularly in view of the fact that, in Chopin v. City of New Orleans, 8 La.App. 152, the Supreme Court refused to grant a writ of certiorari when this identical point of law was presented to it, we feel that we must hold that we cannot consider the question of governmental immunity and *797 must pass to the facts to determine whether there is liability in the defendant, Sewerage & Water Board.
The plaintiffs made no serious effort to show fault on the part of the employees of the Board, relying on the application of the doctrine “res ipsa loquitur.” The work, which was being done, was in the street near the home of plaintiffs, but they themselves were in no way involved in the performance of the work, and, of course, had no right to interfere, did not interfere, and, in fact, knew nothing about how the work was being done, Mr. Metoyer having left for his work in Slidell quite a long time before the work commenced.
The result which caused the damage was such as does not ordinarily occur when such a job is properly and carefully done, and the defendant Board was or should have been in better position to explain the occurrence than were plaintiffs. Thus it is apparent that the doctrine “res ipsa loquitur” is applicable.
As a result of that doctrine, the burden was placed on the defendant Board to show that no negligence of its employees caused the hacking up of the sewage into the residence of plaintiffs.
Counsel for defendant Board made no serious contention ■ that the doctrine “res ipsa loquitur” is not applicable, but based the defense on the contention that the work which was necessary was being done in the customary way, and the method followed had been in use for years and was in use in practically all states of the United States.
It is shown that complaint was made to the Board that the sewerage line was clogged and that the Board sent a crew to remove the blockage in the line. This crew was composed of three or four colored laborers, a foreman, and a truck driver. It was found that the sewerage line was. so far underground that it would not be practicable to dig down to the line, though this is sometimes done when the trouble is found in the line nearer the ground surface. It is shown that when such a condition is found, it is customary to attempt to unblock the line by using first what are known as sewer rods and if the result cannot be accomplished by the use of these rods, then to resort to high pressure water. These rods seem to be inserted into the line and pushed against the obstruction in an effort to dislodge it. In this case the result could not be so accomplished and water pressure was resorted to in accordance with the established custom. It is shown that during many years the water pressure method had been resorted to and that only twice in the knowledge of those in charge has the water line been known to back up into a residence.
This particular sewer line served two residences and also a new housing project. In the line was what is known as a “T” joint. This joint is a piece of pipe made in the form of the capital “T” with two openings, one on each end on the crossbar of the “T”, and one on the lower end of the upright line of the “T”. Water is applied through the opening in the lower upright line of the “T” and is forced through it into the two pipes connected with the openings on the upper crossbar of the “T”. This water is pumped in under heavy pressure and, obviously, unable to remove the obstruction in the line, went out through the other parts of the “T” one of which connected the sewer line with the plumbing outlets in the residence of plaintiffs, and through these plumbing outlets backed up and was emitted through them onto the floors and against the baseboards of the various rooms.
It may be added here that the record shows that sewage content was also emitted into the other residence served by that same line.
This work was done under the supervision of Mr. George William Lex, the utility maintenance foreman of the defendant Board. However, Mr. Lex did not remain in charge of the actual operation. After telling the laborers how they were to proceed, he went to another job *798 about three blocks away. He says, however, that the laborers who were left in charge of the work were "quite old on the job and were not inexperienced men.”
No one of the laborers was placed on the witness stand to testify as to just how the work was done, nor as to how much water was used, nor as to the pressure at which it was pumped into the line.
In view of the fact that the doctrine ■“res ipsa loquitur” is applicable, defendant should have done more than simply state that the work was done in the usual manner. Some one who was actually present should have been called to show just what was done, how much water was used, and whether there was anything during the progress of the operation which would indicate that the blockage in the line was not moving as the water was being introduced. The Board was not called upon to prove just what did cause the damage, but it was required to prove that there was no fault on its part. Cusimano v. New Orleans Public Service, Inc., 170 La. 95, 127 So. 376.
If such a dangerous operation was to be performed by Negro laborers and the foreman who was in charge was not to remain on the job, the Board should have produced evidence as to the details of the ■carrying out of his orders and to show that the work was being done properly.
Because of the failure of the Board to ■show any of these things and because it merely relied on its contention that the work was being done in the usual way, it has not borne the burden thrown upon it by the doctrine relied on by plaintiffs. The Court a qua properly held the defendant liable.
We find no fault with the amounts of the two awards. Mr. Metoyer was awarded actual expenses and the sum of $100 for inconvenience and mental anguish. Mrs. Metoyer showed that she vomited twice as the result of the terrible odor; that she was required to temporarily remove her children from the premises to the residence of her mother where they remained for four nights, and that she had to assist in the cleaning of this most objectionable matter from her furnishings and floors. One of the witnesses testified that there was water two inches deep in the house.
We think that $500 was a very modest award for such an occurrence.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.